Howard E. Goldfluss, J.
The issues presented to the court involve the balance between the rights of the United Nations as an international entity and the individual rights of a citizen of the United States.
The defendant, Mark Weiner, is charged with violation of section 145.00 of the Penal Law, criminal mischief, in that on or about the fourteenth day of November, 1975 at about 3:10 A.M., he sprayed red paint on the outside wall of the United Nations headquarters, located at First Avenue and 43rd Street, in the County, City and State of New York. The complaint alleges, as required by the statute, that the defendant had no right to so act, nor any reasonable grounds to believe that he had such right.
The misdemeanor complaint is executed by security officer Gudmundur Sigurdsson, employed by and representing the United Nations. There is no question that the property al *163 legedly damaged by the acts of the defendant is owned by the United Nations.
Section 145.00 of the Penal Law concerns itself with the traditional concept of "malicious mischief,” i.e., the "intentional infliction of damage to the tangible property of another person without honest claim of privilege” (see Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 145.00).
Defendant, by this motion, moves to dismiss the instant complaint on the grounds that this court has no jurisdiction of the person of the defendant or of the subject matter. In the alternative, if the court finds it has jurisdiction, the defendant seeks to testify at the preliminary hearing and present evidence towards the issuance of a cross complaint charging the complainant Sigurdsson with assault and harassment. The United Nations has advised this court by letter dated January 8, 1976 that if the evidence caused such complaint to be issued, the prospective defendant, Sigurdsson, would claim immunity under the specific provisions of articles 104 and 105 of the Charter of the United Nations, (59 US Stat 1053) and the "Headquarters Agreement” of 1947 (61 US Stat 756) in which the United States and the United Nations established permanent headquarters in the United States, and other statutory authority.
Quoting directly from the letter, "Mr. Sigurdsson is an official of the United Nations in the sense of section 17 of the Convention on the Privileges and Immunities of the United Nations and therefore enjoys the privileges and immunities specified in section 18 of the Convention. Of particular relevance is section 18 subdivision (a) which states that United Nations officials shall '(a) be immune from legal process in respect of words spoken or written and all acts performed by them in an official capacity.’”
After referring to the fact that similar language appears in the International Immunities Act (US Code, tit 22, § 288) the letter states: "It is therefore clear that being an officer and employee of the United Nations Secretariat, Mr. Sigurdsson enjoys immunity from suit and legal process regarding all acts performed by him in his official capacity as an officer in the Security Service of the Secretariat.”
Therefore the two issues of jurisdiction and immunity are presented to this court.
*164 JURISDICTION
The United Nations is an organization created by an international agreement in 1945, to which the United States was a party (59 US Stat 1035 et seq.). It was in effect a treaty entered into by the President of the United States pursuant to that specific power vested in him by article II (§ 2, subd 2) of the Constitution of the United States.
Thus the defendant takes the position that because the United Nations and/or its representative is the complainant in this case, and the fact that the property involved is internationally owned, the court does not have the jurisdiction nor is it empowered to hear this case.
In setting forth jurisdictional perimeters of the Criminal Court of the City of New York, article 3 of the New York Criminal Court Act gives that court and its Judges jurisdiction to hear, try, and determine all misdemeanors (except libel) and all offenses of a grade less than misdemeanor. Jurisdictional definition is repeated in the CPL article 10 (§ 10.30), adding that the local criminal courts have preliminary jurisdiction of all offenses subject to divestiture by a superior court or a Grand Jury.
The defendant opts for Federal jurisdiction and relies upon section 2 of article III of the Constitution of the United States, which provides as applicable to the issue here "The judicial Power shall extend to all Cases in Law and Equity arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; —to all Cases affecting Ambassadors, other public Ministers and Consuls.”
It would appear that after examining precedent, the defendant would be hard pressed to extend Federal jurisdiction by way of the "Headquarter’s Agreement.” He would have to satisfy the "arising under” concept; — that his situation arose directly from the "Agreement” between the United States and the United Nations (see Wright, Federal Practice and Procedure, § 3562). The test for Federal jurisdiction is "the federal nature of the right to be established * * * not the source of the authority to establish it” (see Gully v First Nat. Bank, 299 US 109, 114; Buechold v Ortiz, 401 F 2d 371).
The international treaty known as the Headquarters Agreement confers certain powers on the United Nations, and since the United States is a party, its courts are bound to accept, *165 enforce and protect such powers. The Constitution of the United States in section 2 of article VI makes this unmistakably clear. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and all Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
Therefore this court is constrained to abide by the following pertinent sections of the Headquarters Agreement as contained in article III, entitled "Law and Authority in the Headquarters District” (61 US Stat 760).
Subdivision (b) of section 7 — "Except as otherwise provided in this agreement or in the General Convention, the federal, state, and local law of the United States shall apply within the headquarters district”; and this is implemented in subdivision (c) by "the federal, state, and local courts of the United States shall have jurisdiction over acts done and transactions taking place in the headquarters district as provided in applicable federal, state and local laws.”
Finally, section 10 states (61 US Stat 761): "The United Nations may expel or exclude persons from the headquarters district for violation of its regulations adopted under Section 8 or for other cause. Persons who violate such regulations shall be subject to other penalties or to detention under arrest only in accordance with the provisions of such laws or regulations as may be adopted by the appropriate American authorities.”
This latter section makes available to the United Nations two options for infractions on the property of the headquarters district. Either the United Nations may deal with the problem by simple expulsion or exclusion, or it may deem the problem more expeditiously handled by the "appropriate American authorities.” This latter course of action in effect would strip the mantle and aura from the international body and cause the instant offense, for jurisdictional purposes, to be considered solely as a crime committed against property located in New York County.
In this context, the court has received a letter from the legal counsel to the United Nations dated December 9, 1975, setting forth the official policy of the United Nations Headquarters as to criminal offenses.
He states in part: "I am authorized to state that no regula *166 tion in the field of, or affecting the application of, criminal law has been adopted by the United Nations. And further, "In this connexion (sic) it is important to observe that the United Nations has no criminal jurisdiction or tribunals under any law or treaty. Therefore if the court were to treat acts of a criminal nature committed within the Headquarters District as excluded from the jurisdiction of the federal, state or local courts of the United States, the consequence would be to create a jurisdictional vacuum in the sense that there would be no courts before which crimes could be tried. Such a situation would be to the advantage neither of the United Nations nor of the people of the State of New York.”
The treaty in no way deprives the United Nations or its representatives of a forum for legal redress, whether it be civil or criminal in nature. The proper forum is the criminal court for reasons stated heretofore. In addition thereto, in the absence of an objection from the Secretary-General of the United Nations, and in absence of any rules or regulations of the United Nations in conflict with the local law, the local law applies (see People v Coumatos, 32 Misc 2d 1085).
Included in this court’s determination of jurisdiction in this case is the issue of the propriety of the District Attorney of New York County to prosecute this defendant. The question is raised by reason of the fact that the situs of the crime was United Nations property and the defendant was apprehended by a United Nations guard who himself is an alien and is a foreign complainant, both individually and as a representative of the United Nations, an international entity.
Section 700 of the County Law, in defining the powers and duties of the office of each county District Attorney Statewide, states in subdivision 1, "It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed”. The word "cognizable” may be defined as "within the jurisdiction of the court” (7A Words and Phrases, p 113). Having concluded that this court does have jurisdiction, it is the right, duty, and obligation of the District Attorney to conduct the prosecution of the instant matter, since it is cognizable by the courts of New York County.
IMMUNITY
Pursuant to the provisions of section 50 of the New York *167 City Criminal Court Act and CPL 60.15 this court will permit the defendant to testify at the preliminary hearing. As stated heretofore, the complainant has advised this court that in the event such hearing results in a finding of reasonable cause to order a cross complaint against the complainant, he will avail himself of the defense of complete immunity, pursuant to the specific provision therefor in the United Nations Headquarters Agreement (61 US Stat 756), and all other statutory authority cited herein. This court has heard no testimony in this case, and by this decision makes no factual predetermination as to probable cause in holding either of the parties for further proceedings. However, it is still incumbent upon this court to determine the propriety of such defense at this juncture. It is axiomatic that no court should or will involve itself in a futile exercise, which would indeed be the result if the immunity defense summarily disposed of any action this court took in ordering a cross complaint if such action was founded on reasonable cause.
An envoy from a foreign sovereign to the United States is accepted or rejected by the executive branch in its absolute discretion and power to conduct foreign affairs. Once being accepted and received, this diplomat is entitled, under the law of nations, to full diplomatic immunity (US Code, tit 22, § 252). This is a political judgment made by the executive branch, and the court may not in any way interfere with such discretion, and is bound by such decision. The problem we face here is that the United Nations is not a foreign sovereign. The complainant, and possible defendant, is an employee of the United Nations. The United States had no say or veto power over his designation, and he therefore acquires immunity only to the extent that it is granted by the Headquarters Agreement. Whether immunity exists by reason of this agreement or the other statutes cited is no longer a political question. It is a "justiciable controversy involving the interpretation of the agreement and its application to the particular facts.” (See United States ex rel. Casanova v Fitzpatrick, 214 F Supp 425, 433.) The complainant is not a diplomatic envoy of a foreign government or a representative of a diplomatic envoy accredited to the Government of the United States. The treaty, and specifically articles 104 and 105 of which the United States is a party, provides:
Article 104: "The Organization shall enjoy in the territory of each of its Members such legal capacity as may be neces *168 sary for the exercise of its functions and the fulfillment of its purposes.”
Subdivision 1 of article 105: "The Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes.”
There is no question that the complainant, who is an employee of the United Nations with the responsibility to protect the property of the United Nations, must of necessity be included among those who are protected under articles 104 and 105. The treaty would be meaningless if the peace and safety of the United Nations Headquarters could not be maintained by its security personnel. But these privileges and immunities referred to are qualified by the words "as are necessary for the fulfillment of its purposes.” These words indicate an intentional limitation of immunity, and Judge Weinfeld in his erudite decision (United States ex rel. Casanova v Fitzpatrick, supra), clearly pointed out that immunity of United Nations personnel is not the same as the unlimited immunity granted to a foreign sovereign. Sovereign immunity is absolute. It cannot be questioned or challenged. In contrast, immunity granted to United Nations personnel is clearly limited to acts which normally occur toward fulfillment of its purpose. The question is raised as to whether the complainant has exceeded this limitation in executing his responsibilities and duties.
The defendant alleges that after placing him under arrest, the complainant assaulted him without provocation or cause. If in fact at the hearing of this case there is reasonable cause to believe that such allegations are true, then by articles 104 and 105 of the charter and all other relevant statutory authority cited, the logical conclusion is that the complainant would be responsible for his acts if he acted in excess of his authority and became an aggressor. There is nothing, novel about such a conclusion. A police officer in the City of New York faces departmental disciplinary proceedings and even criminal charges when he arrests a person and then proceeds to summarily inflict punishment. In such a situation he is abusing his power and is responsible for the consequences of such abuse. Here, Sigurdsson, the security officer, acted within his powers and was cloaked with immunity to the point of interrupting the defendant from defacing the wall and taking him into custody using reasonable force to accomplish that pur *169 pose. If, as the defendant Weiner contends, the complainant Sigurdsson used excessive force and needlessly assaulted him after placing him in custody, then the immunity referred to in article 105 will cease to protect him, and he will bear the same responsibility and face the same consequences as the New York City police officer. Our system of justice requires restraint from law enforcement officials, and our courts draw a line between proper police procedure and abuse of police authority. Whether the complainant Sigurdsson has stepped over that line is not a matter for the United Nations to decide. It is the responsibility of this court in light of the fact that the "justiciable issue” has been presented to it for determinations of law and fact, and as Judge Weinfeld pointed out in Casanova, this court is also charged with interpretation of the issue of immunity as it applies to the facts of this case. A full hearing in which all parties testify is the only valid procedure to resolve these issues.
In addition to the foregoing, there are equitable considerations which motivate this court in reaching its conclusions. There is a limit to which the international agreement creating the United Nations can inure to the detriment, disadvantage, and unequal protection of a citizen of the United States. A basic concept and motivating factor of the founders of this Republic was the absolute right of every citizen to petition for redress in its courts. The United Nations, through the complainant, has invoked its right to redress against this defendant. This, by treaty, it has the absolute right to do. The treaty also lays the basis for its claim of immunity and sets forth the conditions under which such immunity can be utilized. This court is cognizant of the necessity to insulate the international community from local process. It is also aware that every effort must be made by the judicial branch to avoid embarrassing the executive arm of our Government by assuming an antagonistic jurisdiction in dealing with issues of immunity. (See United States v Lee, 106 US 196; Matter of Republic of Peru, 318 US 578.) But this principle is not so absolute as to permit the United Nations to demand jurisdiction of a court on one hand and to avoid the consequences of the finding of that court on the other. This controversy arises out of a singular and identical incident. In order to prosecute the defendant Weiner, security officer Sigurdsson will voluntarily testify as a witness for the People. The United Nations takes the position that irrespective of what the direct exami *170 nation and cross-examination of this witness discloses, he will not have waived immunity by such sworn testimony. The inevitable extension of this position is that even if the witness perjures himself, immunity would still vest, yet the defendant could conceivably be held, tried, and convicted on such testimony. This is so unconscionable that it violates on its face the concepts of fundamental fairness and equal treatment of all persons who seek judicial determination of a dispute. The treaty is not so sacrosanct as to cause a defendant in this court to be placéd in a lesser position because the complainant is a representative in the international community. Certainly, the United Nations could not reasonably expect such a retreat from standards of justice which this nation has struggled to maintain since its birth. The immunity for United Nations personnel derived through the treaty is intended to shield the diplomatic corps in our midst. It was not intended to be used by them as a sword to pierce constitutional protections which are inherent in American citizenship. It is inconceivable that the foreign policy of this Nation will be impaired by strict maintenance of these constitutional safeguards.
The motion to dismiss for lack of jurisdiction is denied. Accordingly, a hearing will be held in this matter on February 9, 1976. The defendant will be permitted to testify at said hearing. In the event that the evidence submitted gives this court reasonable cause to believe that a counter complaint for assault and/or harassment should be ordered against the complainant, the defense of immunity will not and does not lie.