James E. Mulcahy, J.
Defendant, an American citizen was tried on a 44-count indictment for the crimes of grand larceny in the first degree by means of false and fraudulent representations made by the defendant, all of which crimes were allegedly committed within the confines of the United Nations headquarters.
The evidence indicated that the defendant was employed on the premises at the United Nations headquarters as an inventory clerk on the payroll of the United Nations, and that he was arrested by the New York City police outside the United Nations headquarters, to wit in Bronx County.
*1086 The defendant waived his right to a trial by jury and consented to proceed with the court as the sole trier of the facts as well as the law.
In this case the defendant has objected to the entire proceeding on the stated ground that this court is entirely without jurisdiction by virtue of his position as a United Nations employee and in view of the fact that all of the alleged acts constituting a violation of our Penal Law took place on the United Nations premises, which the United States ceded to this international organization by agreement in 1947.
On June 26, 1947, the United States and the United Nations entered into an agreement commonly called the ‘ ‘ Headquarters Agreement” (U. S. Code, tit. 22, § 287 et seq.-, 61 U. S. Stat. 756, 80th Cong. 1st Sess., 1947, ch. 482). Under its provisions, diplomatic immunity was extended to four principal categories of representatives of member nations of the United Nations, i.e., ambassadors or ministers plenipotentiary; resident members or their staffs; persons designated in the United Nations Charter; and such other principal resident representatives of members to a specialized agency or members of their staffs.
Section 25 of the Penal Law has codified this rule of national policy regarding immunity of foreign diplomats and their staffs in New York. (See, also, U. S. Const., art. Ill, § 2.)
However, this blanket immunity was not conferred upon officers and employees of the United Nations — as distinguished from the four categories of resident representatives of the United Nations — but their immunity is defined in the International Organizations Immunities Act of 1945 (U. S. Code, tit. 22, § 288 et seq. ).
££ An employee of the United Nations, as such, is separate and distinct from persons designated by foreign governments to serve as their governmental representatives in or to the United Nations”. (United States v. Melekh, 190 F. Supp. 67, 81.) The distinction appears in article 105 of the United Nations Charter (79th Cong., 1st Sess., 1945, 59 U. S. Stat. 1033, 1053) and the United States Code (tit. 22, §§ 288a, 288d).
Under subdivision (b) of section 288d, relating to immunity from suit and local processes, it is provided that representatives, employees and officers of international organizations have immunity only with respect to £ ‘ acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees ”. (See United States v. Coplon, 84 F. Supp. 472 [1949].)
The court notes that defendant, even as an United States citizen, by virtue of his employment with the United Nations, *1087 would gain the same immunity as any official of an international organization for all acts performed in his official capacity. (See Cong. Comments on Immunities Act, 1945, U. S. Code Cong. Serv. p. 946.)
In this case the defendant does not claim that he was or is a diplomatic officer accredited to the United Nations or to any other government; he does not claim that the acts charged against him in the indictment were, directly or remotely related to the functions of his United Nations employment and he does not claim that he was a representative of any government to the United Nations or a member of the staff of any representative to the United Nations.
What does the defendant offer as evidence regarding his claimed immunity? His claim is rested upon the Headquarters Agreement (§§ 8, 9; U. S. Code, tit. 22, § 287). These provisions do not overturn the court’s conclusions. Even when the court has jurisdiction, as a matter of international comity, it should relinquish jurisdiction over a foreign diplomat when the merest “ suggestion ” of immunity has been properly presented to it. (De Miglio v. Paez, 18 Misc 2d 914 [1959].) It would seem reasonable to follow the same rule where a representative, officer or an employee of the United Nations was also concerned. However, that is not this case. Here, the defendant not being in any one of the above-enumerated classifications is totally without immunity on this point. Cases on this subject are not numerous, but, from one of the earliest reported cases (County of Westchester v. Ranollo, 187 Misc. 777 [1946]) up to the present, never has a person situated in like circumstances, as the defendant in this case, been found by the courts to be immune from the jurisdiction of our Federal, State or local law.
Nevertheless, the question remains as to whether we have jurisdiction over the acts as allegedly committed within the premises of the United Nations. This is the vital question that has not heretofore been clearly presented in the reported cases.
While it is true that the United States in ceding certain powers and lands to international control did agree that “ [t]he headquarters district shall be under the control and authority of the United Nations ” (Headquarters Agreement, § 7, subd. [a]; U. S. Code, tit. 22, § 287; 80th Cong., 1st Sess., ch. 482; Public Law 357); and, under subdivision (a) of section 9 of the Headquarters Agreement did agree further that the “ headquarters district shall be inviolable ” such agreement meant only that Federal, State and local officers shall not enter the Headquarters District to perform any official duties except upon the consent of the Secretary-General.
*1088 Without prejudice to any of its charter provisions, the United Nations as part of its agreement with the United States, consented to prevent the Headquarters District, from being used as a refuge by those seeking to avoid arrest or service of local processes under the Federal, State or local law of the United States. (See Headquarters Agreement, § 9, subd. [b].)
The United Nations has full power to formulate its own rules and regulations for execution of its functions. (See Headquarters Agreement, § 8.) Moreover, it has the power only to expel or exclude persons from the Headquarters District for violation of its regulations. (See Headquarters Agreement, § 10.)
However, any other penalty or arrest can be made “ only in accordance with the provisions of such laws or regulations as may be adopted by the appropriate American authorities ”. Therefore, it would appear that the United Nations is without jurisdiction or authority to hear and determine either criminal or civil cases. (See Opinion by Culkiit, J., N. Y. L. J., July 18, 1961, p. 6, col. 4.) Such power is reserved to the appropriate American authorities who may remove any person from the Headquarters District as requested under the authority of the United Nations. (See Headquarters Agreement, § 16.)
Once having removed a person from the Headquarters District under these circumstances, what can further be done? — or, what if a person is arrested within the United Nations upon consent of the Secretary-General for allegedly committing acts done in violation of local statutes within the premises of the United Nations or is arrested outside the premises as was the defendant in this case, and upon the complaint of someone within New York State or elsewhere; here again, what can be done? Have we jurisdiction if the person is not one to whom diplomatic immunity has been given? The answers seem to be contained in subdivision (b) of section 7. “ Except as otherwise provided in this agreement or in the General Convention, the federal, state and local law of the United States shall apply within the headquarters district”. Further, subdivision (c) of section 7 provides: “ Except as otherwise provided in this agreement or in the General Convention, the federal, state and local courts of the United States shall have jurisdiction over acts done and transactions taking place in the headquarters district as provided in applicable federal, state and local laws ”.
Accordingly, it would appear from this agreement that the local law shall have jurisdiction over any acts done or transactions taking place within the Headquarters District which are in violation of such laws and the courts of the appropriate American authorities shall have jurisdiction to try and determine *1089 issues between the parties. However, such Federal, State or local laws shall, of course, not be inconsistent with any regulation that has been authorized by the United Nations. (See § 8.)
For the court to recognize the existence of a general and unrestricted immunity over suits or transactions, as proposed by defendant, would be to establish a large preferred class of people within our borders who would be immune to punishment inasmuch as the United Nations has no tribunal for the control and punishment of defendants among its personnel. It can at best expel or eject them from the Headquarters District and such persons would escape trial and punishment completely. Such a blanket immunity is contrary to our sense of justice and cannot be supported by any reference to the United Nations Charter, acts of Congress or executive orders of the President.
Defendant also takes the position that even if he is not immune from legal process, the United Nations must give its consent (see § 9, subd. [a]) prior to the indictment by the Grand Jury and, since its consent was obtained after the indictment, such consent is illegal and without any effect whatever.
That section of the Headquarters Agreement has no application to the proceedings now before this court which commenced with the arrest of the defendant somewhere outside the Headquarters District; whereupon the police had power to arrest anyone, upon good cause shown in accordance with our arrest statute (Code Crim. Pro., § 148 et seq.), and may then release such person upon the presentation of United Nations identification credentials that contain diplomatic immunity. However, should there be no immunity from an arrest, consent of the United Nations is not required since the arrest took place outside United Nations property, and the United Nations could not grant any immunity to the defendant (see United States v. Melekh, 190 F. Supp. 67, 87, n. 1, supra).
Moreover, inasmuch as the police never entered the Headquarters District to “perform any official duties therein” no consent of their acts was then required or then necessary; likewise, the Grand Jury could proceed to indict defendant without delay since its jurisdiction had been conferred at the inception of the Headquarters Agreement in 1947 when the United Nations, then and there, reserved to the Federal, State and local authorities all jurisdication over violations involving a penalty or arrest. (See § 10.)
Upon the foregoing reasons, the motion to dismiss the indictment is denied.
The court, as trier of the facts, finds the defendant guilty, beyond a reasonable doubt, of the crimes of grand larceny in *1090 the first degree under all the counts of the indictment with the exception of counts numbered 11, 12, 29 and 30, which were withdrawn on the motion of the District Attorney, in which the defense counsel joined.