RAYMONDE SHAMSEE, Respondent, v MUDDASSIR A. SHAMSEE, Defendant. UNITED NATIONS JOINT STAFF PENSION FUND et al., Appellants.

Second Department, May 19, 1980

APPEARANCES OF COUNSEL

*Edward R. Korman, United States Attorney (Joan M. Dolan* of counsel), for appellant.

*Bradley B. Davis* for respondent.

### OPINION OF THE COURT

GIBBONS, J.

Muddassir Ali Shamsee and Raymonde Shamsee were married in 1956 and resided in Jamaica, Queens. Mr. Shamsee is a Pakistani national and a retired employee of the United Nations. In 1975, after marital difficulties developed, Mrs. Shamsee brought an action for support in the Supreme Court, Queens County, and was awarded the sum of $200 per week. Thereafter Mr. Shamsee retired from his United Nations employment and returned to Pakistan, allegedly taking with him all of the family assets, including the entire contents of the marital home.

In December, 1976 Mrs. Shamsee obtained a sequestration order against her husband, whose chief remaining asset in this country is a share in the United Nations Joint Staff Pension Fund. The fund's Secretary, Arthur C. Liveran, declined to comply with the sequestration order invoking immunity from legal process for the fund and for himself in his official capacity under the Convention on the Privileges and Immunities of the United Nations (21 UST 1418, TIAS 6900, §§ 2, 3, 18 [eff April 29, 1970]) and under the International Organizations Immunities Act (US Code, tit 22, § 288 *et seq.*). By a decision and order dated, respectively, May 24 and June 6, 1978, Special Term held the fund and its secretary in contempt of court for failure to comply with the sequestration order and ordered them to purge themselves of contempt by turning over Mr. Shamsee's pension assets to his wife as receiver, and in the event of a failure to do so, ordered the issuance of a warrant for the secretary's arrest.

After Special Term again issued orders citing the fund and its secretary for contempt and ordering the secretary's arrest, the United States Attorney, at the request of the United States Department of State, appeared on behalf of the United Nations appellants and was granted a stay of the secretary's arrest pending a determination of the question of immunity. Two affidavits were submitted to the court. The first was an affidavit of Erik Suy, Under-Secretary-General and Legal Counsel of the United Nations, attesting to the fact that the fund is an organ of the United Nations, regulated by the General Assembly; that its assets are the property of the United Nations, immune from process by virtue of treaty and statute; and that the secretary of the fund is appointed by the Secretary-General of the United Nations, and is likewise immune for acts performed in his official capacity. The second affidavit was sworn to by Sol Kuttner, an official of the Department of State assigned to the United States Mission to the United Nations, responsible for maintaining records concerning United Nations officials entitled to immunity. Mr. Kuttner stated that Arthur C. Liveran "was duly notified * * * as a professional employee of the United Nations Secretariat * * * [and] is and has been employed by the United Nations as Secretary of the United Nations Joint Staff Pension Board" and thus is entitled to immunity for acts performed in his official capacity.

In February, 1979 Special Term denied a motion to vacate

its prior orders, finding "no adequate proof that an official of the State Department with the proper authority has actually determined the merits of the claim of immunity." In a subsequent ex parte order, the court ordered the United States Attorney, among other things, to seek a "formal opinion" from the Department of State on the immunity question. The United States thereafter produced a State Department Certificate attesting to Mr. Liveran's status as a professional employee of the United Nations Secretariat and as Secretary of the United Nations Joint Staff Pension Fund. Further, a letter from the State Department's Deputy Legal Adviser expressed the view that the fund and its secretary are entitled to immunity from the sequestration order. The certificate and the letter were submitted in support of a renewed motion to vacate the prior contempt and commitment orders.

By decision dated August 31, 1979, Special Term denied the motion but continued to stay enforcement of the prior orders. The court additionally directed the United States Attorney "to refer this matter to the Attorney General, who shall, in turn, refer it to the President of the United States" for a purported "ruling" on the immunity question pursuant to section 288 of title 22 of the United States Code. The resulting order is the subject of this appeal.

■ ■ The order appealed from must be reversed and the prior orders of contempt and commitment vacated. With the discontinuance of the executive branch practice of making suggestions of immunity, which when recognizing and allowing a claim of immunity were deemed binding on the courts (*Matter of Peru,* 318 US 578; *Matter of United States of Mexico v Schmuck,* 293 NY 264, 271-272, rearg granted 294 NY 265; cf. *Compania Espanola v Navemar,* 303 US 68), the question of immunity from legal process under treaties and statutes of the United States lies within the province of the courts, which are bound by the Constitution to follow "the supreme Law of the Land" (US Const, art VI, cl 2). While the executive branch continues to advise the courts on matters relating to immunity which are within its unique knowledge and competence and its opinion on the interpretation of treaties is entitled to "great weight" (*Kolovrat v Oregon,* 366 US 187, 194), claims of immunity must be resolved by the court on the basis of the facts properly before it (see *Menon v Weil,* 66 Misc 2d 114; *Matter of "Anonymous" v "Anonymous",* 44 Misc 2d 14; *Tsiang v Tsiang,* 194 Misc 259). Special

Term thus erred in its insistence on proof that the State Department has passed upon the immunity claim at bar and in its order to the United States Attorney to obtain a formal opinion on the question. Moreover, in our opinion, the facts in this case establish beyond doubt that the United Nations Joint Staff Pension Fund and its secretary are immune from the sequestration order at Special Term under the applicable Federal law.

█ The conclusion of immunity may be reached independently on either of two legal grounds. Section 2 of the Convention on the Privileges and Immunities of the United Nations (21 UST 1422, TIAS 6900) to which the United States became a party on April 29, 1970, confers immunity from "every form of legal process", except insofar as expressly waived, on "[t]he United Nations, its property and assets wherever located and by whomsoever held". Subdivision (a) of section 18 of the same convention grants functional immunity to officials of the United Nations "in respect of words spoken or written and all acts performed by them in their official capacity". In a similar tenor, the International Organizations Immunities Act (US Code, tit 22, § 288 *et seq.*) decrees that international organizations within the statutory definition (§ 288), of which the United Nations is one by virtue of Executive Order 9698 (11 Fed Reg 1809 [1946]), and their property and assets wherever located and by whomsoever held, "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments", except to the extent that such immunity is expressly waived (§ 288a, subd [b]). Officers and employees of international organizations, in the absence of waiver, "shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such * * * officers, or employees" (§ 288d, subd [b]); see, generally, *United States v Melekh,* 190 F Supp 67, 78-79).

The record demonstrates with convincing clarity that the pension fund is an organ of the United Nations, subject to regulation by the General Assembly, and that its assets, although held separately from other United Nations property, are the property of that international organization. The funds which Mrs. Shamsee seeks to sequester, therefore, are impervious to legal process under both section 2 of the convention and section 288a of title 22 of the United States Code (the International Organizations Immunities Act). Furthermore,

Mr. Liveran's refusal to pay pension fund moneys to Mrs. Shamsee under the sequestration order clearly constituted an act undertaken in his official capacity as secretary of the fund, and he is thus shielded from a contempt finding and its consequences by section 17 of the convention and by section 288d of title 22 of the United States Code.* Respondent's contention that the fund is a commercial entity, distinct from the United Nations proper, does not withstand scrutiny. The very facts adduced to support this argument—that the fund's offices are located at the United Nations Headquarters, that the United Nations deposits moneys into the fund and that the fund's operation is regulated by the General Assembly—only underscore the intimate connection between the fund and its parent organization.

█ We note additionally that it was error for Special Term to direct the United States Attorney to refer the matter of immunity to the Attorney General for the purpose of obtaining a "ruling" by the President of the United States pursuant to section 288 of title 22 of the United States Code. That statute grants the President a measure of discretion, to be exercised by "appropriate Executive order", to withhold, withdraw, make conditional or limit the privileges, exemptions and immunities otherwise conferred on an international organization by the International Organizations Immunities Act. Assuming, *arguendo,* that the court had personal jurisdiction over the United States, we are unable to find in section 288 any mechanism by which the President may be requested to "rule" on questions of immunity which arise in judicial proceedings; nor do we find any basis in the statute for an order in the nature of mandamus to any other executive branch officer to "refer" such a matter to the President.

Moreover, since the intervention by the United States to

---

* There has been no waiver of immunity in this case. After he was served with the sequestration order, Mr. Liveran determined that in the absence of a pension fund regulation authorizing the waiver, he lacked the power to consent to subject the fund to legal process. The United Nations Administrative Tribunal upheld that determination (UN Ad Trib Dec. No. 245 [May, 1979]), but recommended that the pension fund adopt a rule similar to UN staff rule 103.18 (b) (iii), which provides that the United Nations' privileges and immunities "furnish no excuse to the staff members who enjoy them for nonperformance of their private obligations or failure to observe laws and police regulations". There is some indication in the record that the board of the pension fund is about to undertake consideration of such a rule. Our decision today is, of course, without prejudice to Mrs. Shamsee's rights under the sequestration order, dated December 30, 1976, in the event that a rule permitting waiver is adopted by the pension fund board, and the fund, in fact, waives its immunity from process.

advise the court on a question of immunity is in the nature of a special appearance (cf. *Tsiang v Tsiang,* 194 Misc 259, *supra),* The United States cannot be said to have waived its own sovereign immunity and thus to have subjected itself to the court's personal jurisdiction.

We have examined the respondent's other contentions and find no merit in them.

Accordingly, the order should be reversed, on the law, without costs or disbursements, and the motion granted.

LAZER, J. P., MANGANO and MARGETT, JJ., concur.

Order of the Supreme Court, Queens County, dated August 31, 1979, reversed, on the law, without costs or disbursements, and motion, *inter alia,* to vacate prior orders of the same court which, *inter alia,* held the United Nations Joint Staff Pension Fund and its Secretary, Arthur C. Liveran, in contempt of court, granted.