**Joseph R. BOIMAH, Plaintiff,**

v.

**UNITED NATIONS GENERAL ASSEMBLY, Defendant.**

**No. 87 C 1752.**

United States District Court, E.D. New York.

July 24, 1987.

Joseph R. Boimah, pro se.
No appearance for defendant.

### MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this suit *pro se* pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging employment discrimination and naming the General Assembly of the United Nations as defendant.

The complaint alleges, in substance, that defendant has denied and continues to deny plaintiff a position of permanent employment on account of his race and African nationality. The complaint lacks specifics as to times and certain facts, but the court infers that plaintiff was employed in some sort of temporary capacity in a document department of the United Nations and subsequently laid off notwithstanding his requests for a permanent position. Since that time, plaintiff says that others with whom he worked have been given permanent positions, and his former department has continued to hire persons (presumably of different races and nationalities than plaintiff) while telling him that there are no vacancies.

Plaintiff also alleges that after he complained and filed charges with the New York State Human Rights Commission ("Human Rights Commission"), he was harrassed, followed around, and even assaulted. Although he admits he has no proof of a retaliatory connection, he says that he feels there is one.

Plaintiff filed charges with the Human Rights Commission on October 7, 1986, and the Equal Employment Opportunity Commission issued a Notice of Right to Sue letter on April 23, 1987. That letter dismissed plaintiff's charge for the stated reason that his employer, the United Nations General Assembly, was "not covered by Title VII."

On its own motion this court now considers whether to dismiss the complaint for the same reason.

Title VII by its terms does not require a dismissal. Its definition of an "employer," at 42 U.S.C. § 2000e(b), excludes certain entities, most notably organizations with less than fifteen employees, but does not explicitly exclude an international organization such as the United Nations. Nor do the provisions of 42 U.S.C. § 2000e–1, which exempts religious organizations from the coverage of Title VII, apply.

However, the Convention on the Privileges and Immunities of the United Nations ("Convention"), 21 U.S.T. 1418, T.I.A.S. No. 6900, which was adopted by the General Assembly on February 13, 1946 and acceded to by the United States on April 29, 1970, confers on the United Nations a broad immunity from suit. Section 2 of the Convention provides: "The United Nations ... shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." 21 U.S.T. 1418, 1422.

A similar immunity exists pursuant to the International Organizations Immunities Act ("Act"), 22 U.S.C. §§ 288–228f-2. Section 2(b) of the Act says that "[i]nternational organizations ... shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b). The United Nations is an "international organization" within the meaning of the Act's definition thereof, 22 U.S.C. § 288, by virtue of Executive Order No. 9698, Feb. 19, 1946, 11 Fed.Reg. 1809.

There can be little question that the General Assembly, as one of the six principal organs of the United Nations, *see* Charter of the United Nations ("Charter"), art. 7, para. 1, 59 Stat. 1033, 1038 (1945), enjoys these same immunities. *Cf. International Refugee Organization v. Republic S.S. Corp.*, 189 F.2d 858 (4th Cir.1951) (plaintiff, an United Nations agency, treated as international organization under § 288a); *Shamsee v. Shamsee*, 74 A.D.2d 357, 428 N.Y.S.2d 33 (2d Dep't 1980) (United Nations Joint Staff Pension Fund entitled to § 288a immunities), *aff'd mem.*, 53 N.Y.2d 739, 421 N.E.2d 848, 439 N.Y.S.2d 356, *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981).

It is unclear whether the Act, by granting to international organizations immunity co-extensive with that of foreign governments, confers the absolute immunity foreign governments enjoyed at the time of the Act's passage, or the somewhat restrictive immunity provided for in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*, withholding immunity from claims based on, among other things, a foreign government's "commercial activity." *See, e.g., Broadbent v. Organization of American States*, 628 F.2d 27, 30–35 (D.C.Cir.1980).

The court need not decide the issue. Under the Convention the United Nations' immunity is absolute, subject only to the organization's express waiver thereof in particular cases. Moreover, even if the Foreign Sovereign Immunities Act applies so as to limit the Act's grant of immunity, an international organization's employment relationship with its internal staff is not "commercial activity." *See Tuck v. Pan American Health Organization*, 668 F.2d 547, 550 (D.C.Cir.1981); *Broadbent, supra*, 628 F.2d at 34–35.

The question under both the Convention and the Act, therefore, is whether the United Nations has ever "expressly waived" its immunity to employee actions brought pursuant to Title VII.

The court can find no evidence of an express waiver. The court is aware of what is known as the Headquarters Agreement of the United Nations, 61 Stat. 756 (1947), *reprinted following* 22 U.S.C. § 287, section 19 of which reads in its entirety: "It is agreed that no form of racial or religious discrimination shall be permitted within the headquarters district." 61 Stat. 756, 764 (1947). But this language hardly constitutes an "express" waiver of immunity from Title VII or other racially-based employment suits.

Moreover, article 105(1) of the Charter reads: "The Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes." 59 Stat. 1033, 1053 (1945). Recent case law is clear that an international organization's self-regulation of its employment practices is an activity essential to the "fulfillment of its purposes," and thus an area to which immunity must extend.

In *Broadbent v. Organization of American States, supra*, the Court of Appeals for the D.C. Circuit held that the defendant was immune under the Act from a suit brought by its employees alleging breach of their employment contracts. The court reasoned:

The United States has accepted without qualification the principles that international organizations must be free to perform their functions and that no member state may take action to hinder the organization. The unique nature of the *international* civil service is relevant.... An attempt by the courts of one nation to adjudicate the personnel claims of in-

ternational civil servants would entangle those courts in the internal administration of those organizations. Denial of immunity opens the door to divided decisions of the courts of different member states passing judgment on the rules, regulations, and decisions of the international bodies. Undercutting uniformity in the application of staff rules or regulations would undermine the ability of the organization to function effectively.

628 F.2d at 34–35 (emphasis in original).

Similarly, in *Mendaro v. World Bank,* 717 F.2d 610 (D.C.Cir.1983), the same court held that the defendant was immune under the Act from an employee's Title VII suit alleging sex discrimination:

> [T]he purpose of immunity from employee actions is rooted in the need to protect international organizations from unilateral control by a member nation over the activities of the international organization within its territory. The sheer difficulty of administering multiple employment practices in each area in which an organization operates suggests that the purposes of an organization could be greatly hampered if it could be subjected to suit by its employees worldwide.

*Id.* at 615–16.

This policy underlying the immunity of an international organization also suggests that the court should be slow to find an "express" waiver. As the *Mendaro* court noted, "courts should be reluctant to find that an international organization has inadvertently waived immunity when the organization might be subjected to a class of suits which would interfere with its functions." *Id.* at 617.

Absent an express waiver of immunity the complaint against the General Assembly cannot stand. Plaintiff did not name as defendants in his complaint the individual officials responsible for employment decisions at the United Nations. Even if he had, the same result would lie.

Section 7(b) of the Act provides in pertinent part that "officers and employees of [international] organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions

as such ... officers, or employees." 22 U.S.C. § 288d(b). Section 18(a) of the Convention is even broader: "Officials of the United Nations shall: (a) be immune from legal process in respect of ... all acts performed by them in their official capacity." 21 U.S.T. 1418, 1432.

Case law under 22 U.S.C. § 288d(b) is clear that employment-related decisions by officers charged with such responsibilities fall within the scope of that section's immunity. *See, e.g., Tuck v. Pan American Health Organization, supra,* 668 F.2d at 550 & n. 7. This is so even where the motives underlying the action are suspect. *See Donald v. Orfila,* 788 F.2d 36, 37 (D.C. Cir.1986) (per curiam). There is no reason to reach a stricter definition of "official capacity" under section 18(a) of the Convention.

The court hesitates to dismiss the complaint because the remote possibility exists that the General Assembly, if it were aware of this suit, might choose to waive its immunity with respect to it. Accordingly, the Clerk of the Court is directed to serve by mail a copy of plaintiff's complaint and of this memorandum and order upon the legal department of the General Assembly. If service is rejected, or if the General Assembly otherwise manifests an intent not to waive immunity in this particular instance, the court will then issue an order dismissing the complaint. So ordered.