Maurizio DE LUCA, Plaintiff,

v.

The UNITED NATIONS ORGANIZATION, Javer Perez De Cuellar, Louis Maria Gomez, Armando Duque, Kofi Annan, Abdou Ciss, Oleg Bugaev, Susan R. Mills, Frederick Gazzoli, Defendants.

No. 92 Civ. 2021 (WK).

United States District Court, S.D. New York.

Jan. 10, 1994.

Maurizio De Luca, pro se.

Francis M. Ssekandi, Deputy Director, General Legal Div., U.N. Office of Legal Affairs, New York City, for defendant.

Richard W. Mark, Asst. U.S. Atty., New York City, for U.S.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiff moves for default judgment against the United Nations and eight U.N. officials and employees under Federal Rule of Civil Procedure 55(b)(2). On March 30, 1993, plaintiff filed a complaint *pro se* alleging breach of contract, forgery, negligence and the violation of federal civil rights and employee medical benefits law. When plaintiff served process upon defendants during April, May and June 1993, the U.N. Legal Counsel wrote the court explaining that the organization and the individual defendants— with respect to acts performed by them in their official capacity—are immune from all legal process under international and United States law. None of the defendants have answered the complaint. Presently, the U.N., on behalf of itself and the eight individual defendants, moves to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process and on the basis of immunity. The United States appeared at oral argument on the motions on September 10, 1993, and has submitted a statement of interest in support of defendants' motion to dismiss.

For reasons that follow, we deny plaintiff's motion for default and, on the basis of immunity, grant defendants' motion to dismiss the complaint.

## BACKGROUND

Plaintiff, a United States citizen, was employed by the U.N. as a security officer from June 1977 until December 31, 1988, the effective date of his resignation. Pursuant to regulations set forth by its General Assembly, the U.N. withholds the estimated federal and local taxes of staff members whose national governments require them to pay such taxes based on their U.N. salaries. It then reimburses the employees, enabling them to pay their taxes directly to their national governments. Between 1977 and 1987, the U.N. withheld plaintiff's estimated federal, state and local income taxes and then reimbursed him in the form of checks made payable to himself and the Internal Revenue Service. However, for the tax year 1988 the U.N. withheld plaintiff's estimated taxes but never reimbursed him. The U.N. claims that it did so because plaintiff failed to provide it with certified copies of his 1988 tax return. Plaintiff alleges that the U.N. reported to the I.R.S. that it *had* reimbursed his withheld taxes for 1988. This information, plaintiff contends, led the I.R.S. to audit him for those tax years between 1990 and 1992. Moreover, because the U.N. never reimbursed him in 1988, plaintiff was personally required to pay $6,801.36 in federal, state and local tax for that year.

Plaintiff contends that the U.N.'s actions constituted breach of his employment contract, prima facie tort, injurious falsehood and employment discrimination prohibited by Title VII, 42 U.S.C.A. 2000e et seq. (1981 & Supp.1991). He alleges that in 1987, in retaliation for pressure exerted by the United States on the U.N. to reduce its personnel during the mid–1980s, U.N. Secretary–General Javer Perez de Cuellar initiated an unprecedented tax audit of United States nationals employed by the organization, including himself. Plaintiff claims that U.S. nationals were singled out in the audit, as the U.N. never audited the nationals of four other countries which, like the U.S., require that U.N. employees pay national taxes.

After plaintiff left the U.N., on April 20, 1989, its Finance Division issued a "final pay statement" which indicated that plaintiff had received $850.72 in retroactive pay and compensatory time which he alleges he never received. Plaintiff further alleges that this final pay statement contained his forged signature and was issued with the intent of defrauding him of his remaining salary and compensatory time.

Finally, plaintiff claims that the U.N. denied him continuation of his medical benefits after his resignation in violation of 29 U.S.C.A. § 1161 (Supp.1993), which requires certain employers to allow former employees to elect continued coverage under the employer's group health insurance plan.

## DISCUSSION

Plaintiff contends that he is entitled to default judgment against defendants because they failed to answer his complaint, which alleges damages in the amount of $1,408,-504.76. The U.N. argues that plaintiff's complaint must be dismissed under Fed.R.Civ.

Pro. 12(b) because both itself and the individual defendants, who are alleged to have been acting in the course of their employment, are cloaked with immunity under international and federal law. On a motion to dismiss, a district court must construe the complaint in favor of the pleader, see Scheuer v. Rhodes (1974) 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, and must accept as true its factual allegations. See LaBounty v. Adler (2d Cir.1991) 933 F.2d 121, 123. We separately discuss plaintiff's claims against the United Nations and those against the individual defendants.

## A. THE UNITED NATIONS

■ Under the Convention on the Privileges and Immunities of the United Nations ("U.N. Convention"), Feb. 13, 1946, 21 U.S.T. 1418, 1422, T.I.A.S. 6900, acceded to by the United States in 1970, the U.N. and "its property and assets" enjoy immunity from "every form of legal process except insofar as in any particular case it has expressly waived its immunity." U.N. Convention, art. II, sec. 2; see also Boimah v. United Nations General Assembly (E.D.N.Y.1987) 664 F.Supp. 69, 71.[1] A district court may dismiss a complaint based on a defendant's established immunity. Properly invoked immunity shields a defendant "not only from the consequences of litigation's results, but also from the burden of defending themselves." Davis B. Passman (1979) 442 U.S. 228, 235 n. 11, 99 S.Ct. 2264, n. 11, 60 L.Ed.2d 846, quoting Dombrowski v. Eastland (1967) 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577. Plaintiff has not alleged that the U.N. has expressly waived its immunity in this instance and no evidence presented in this case so suggests. Finding the U.N. to be immune from plaintiff's claims, we dismiss them.

1. The International Organizations Immunities Act ("IOIA"), 22 U.S.C.A. §§ 288 et seq. (1990 & Supp.1993), enacted in 1945, cloaks the U.N. with similar immunity. Under IOIA, designated international organizations receive the same immunity as that "enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C.A. § 288a(b). The U.N. was so designated by executive order in 1946. See Ex. Ord. No. 9698, 11 F.R. 1809 (Feb. 19, 1946).

The immunity of foreign governments is now governed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.A. § 1602 et seq. (Supp. 1993). The FSIA confers on foreign governments general jurisdictional immunity subject to several exceptions, 28 U.S.C.A. § 1604. We need not consider the application of these exceptions to the instant case, for the U.N. Convention, which contains no such exceptions, provides sufficient ground for finding the U.N. immune from plaintiff's claims.

### B. INDIVIDUAL DEFENDANTS

■ Of the eight current or former U.N. officials and employees named as individual defendants, two currently serve as Assistant Secretaries–General—Luis Maria Gomez and Kofi Annan. The U.N. Convention confers upon such officers "the privileges and immunities, exemptions and facilities accorded to diplomatic envoys, in accordance with international law." U.N. Convention art. V, sec. 19. In the United States, Article 31 of the Vienna Convention on Diplomatic Relations ("Vienna Convention"), Apr. 18, 1961, 22 U.S.T. 3227, T.I.A.S. 7502 (entered into force for the U.S. Dec. 1, 1972), governs the privileges and immunities of diplomatic envoys and provides, in pertinent part:

1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:

(a) A real action relating to private immovable property ...

(b) An action relating to succession in which the diplomatic agent is involved ...

(c) An action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

Assistant Secretaries–General Annan and Gomez are immune from plaintiff's claims under the U.N. and Vienna Conventions as none of the exceptions listed in Article 31 of the Vienna Convention apply here. The instant case is neither a real action relating to private immovable property nor a succession action. Moreover, it involves neither a commercial nor a professional activity exercised by either of these defendants outside their official functions. Rather, plaintiff has alleged that Gomez failed to reimburse him for taxes the U.N. withheld and that Annan denied him the right to elect continued coverage under the U.N.'s group health plan.

■ One of the remaining six defendants is a former U.N. Secretary–General—Javer Perez de Cuellar—and another is a former Assistant Secretary–General—Abdou Ciss. Persons formerly serving the U.N. in such capacity are protected by the same immunity afforded *former* diplomatic agents under the Vienna Convention—immunity "with respect to acts performed by such [ ] persons in the exercise of [their] functions as [ ] member[s] of the mission ..." Vienna Convention, Art. 39(2). Because plaintiff's claims against Perez de Cuellar and Ciss are based solely on their official activities at the U.N., these defendants are immune from the current action. Plaintiff's claims against the former Secretary–General are based on the following: (1) his alleged supervision of the U.N. Finance Division, which failed to reimburse plaintiff for his 1988 taxes and which, plaintiff claims, issued a forged and fraudulent pay statement; (2) his alleged supervision of the U.N. Office of Human Resources Management, which plaintiff claims denied him extended medical coverage; (3) his alleged supervision of the U.N. Office of Human Resources Management, which plaintiff asserts failed to respond to complaints he filed about the taxes, the pay statement and his medical coverage; and (4) his creation of the 1987 tax audit that plaintiff claims was intended to retaliate against the U.S. Similarly, plaintiff's complaint alleges that Ciss, who ran the U.N. Office of Human Resources Management, failed to investigate plaintiff's complaints regarding the aforementioned misconduct.

■ The remaining four defendants are current or former U.N. officers: Armando Duque, former Director of Personnel of the U.N. Office of Human Resources Management; Susan R. Mills, Deputy Controller; Frederick Gazzoli, Acting Chief of the Internal Audit Section of the U.N. Development Program; and Oleg Bugaev, Director of the Internal Audit. Under § 7(b) of the International Organizations Immunities Act ("IOIA"), 22 U.S.C.A. §§ 288 et seq. (1990 & Supp.1993), U.N. officers and employees are immune from suit and legal process "relating to acts performed by them in their official capacity and falling within their functions as [ ] officers or employees, except insofar as such immunity may be waived by the [U.N.]." IOIA, 22 U.S.C.A. § 228d(b).[2]

---

2. The U.N. Convention similarly confers upon certain categories of U.N. officials—those desig-

Here, plaintiff has not alleged that the U.N. has waived the immunity of these four defendants.

We find these four defendants immune from plaintiff's claims under IOIA because those claims relate only to acts performed by them "in their official capacity." The complaint alleges that Duque failed to investigate plaintiff's complaints; that Mills never reimbursed plaintiff for his 1988 taxes and produced a false and forged pay statement; and that Gazzoli and Bugaev, for auditing purposes, obtained documents regarding plaintiff's taxes from New York State officials. Notwithstanding how improper any of these actions may have been, they represent precisely the type of official activity which § 7(b) of IOIA was intended to immunize. *See, e.g., Tuck v. Pan Am. Health Org. et al.* (D.C.Cir. 1981) 668 F.2d 547, 550, fn. 7 (Director of Pan American Health Organization (PAHO) immune under IOIA § 7(b) from plaintiff's breach of contract and race discrimination claims to the extent that "the acts alleged in the complaint relate to [his] functions as PAHO Director"); *Boimah v. United Nations General Assembly* (E.D.N.Y.1987) 664 F.Supp. 69, 71 (individual officers of the U.N. General Assembly would have been immune from plaintiff's employment discrimination action under § 7(b) had plaintiff chosen to sue them individually).

■ Plaintiff contends that none of the individual defendants are immune because in participating in the alleged misconduct each violated either federal and state law or the U.N.'s own internal regulations. However, the case law applying § 7(b) rejects the notion that a defendant's immunity under IOIA can be defeated by allegations of illegal conduct. *See, e.g., Tuck; Boimah.* Plaintiff would have us rely on *People v. Coumatos,* (Gen.Sess.N.Y.Co.1961) 224 N.Y.S.2d 504, *later opinion,* (Gen.Sess.N.Y.Co.1962) 32 Misc.2d 1085, 224 N.Y.S.2d 507, *aff'd mem.* (1st Dep't.1964) 20 A.D.2d 850, 247 N.Y.S.2d 1000, in which the trial court held that defendant, a U.N. inventory clerk indicted on for-

ty-four counts of grand larceny, had no diplomatic immunity preventing it from exercising its jurisdiction over the case. The trial court noted that the defendant failed to claim that his alleged crimes, which involved thefts against his co-workers, were either "directly or remotely related to the functions of his U.N. employment." 224 N.Y.S.2d at 510. *Coumatos* is clearly inapposite as plaintiff's claims challenge actions which defendants have taken in implementing U.N. employment and financial policy.

Similarly unavailing is plaintiff's assertion that defendants acted in bad faith or with improper motive. That assertion has no bearing on our determination whether or not they are immune from the present action under IOIA. *See, e.g., Donald v. Orfila* (D.C.Cir.1986) 788 F.2d 36. In *Orfila,* the D.C.Circuit found defendant, Secretary–General of the Organization of American States (OAS), immune under IOIA § 7(b) from plaintiff's action for breach of contract and intentional infliction of emotional distress, notwithstanding plaintiff's claim that the Secretary had acted in bad faith. The court refused to characterize plaintiff's termination from employment at the OAS as an "individual" rather than "official" act of the defendant based on the asserted impropriety of defendant's motive, reasoning that if it were to determine defendant's immunity in such a manner, "the 22 U.S.C. § 228d(b) immunity shield, which Congress intended to afford solid protection, would indeed be evanescent." *Id.* at 37.

Although plaintiff has levelled some rather serious charges against both the U.N. and the individual defendants, we must bear in mind the policy underlying the immunity from employee actions which international and federal law provides international organizations and their officers, as stated by the D.C. Circuit:

[T]he purpose of immunity from employee actions is rooted in the need to protect international organizations from unilateral control by a member nation over the activi-

---

nated by the Secretary General—"immun[ity] from legal process in respect of words spoken or written and all acts performed by them in their official capacity." U.N. Convention, art. V., sec.

18(a). We need not determine which individual defendants fall within such designated categories as the officer immunity provision of IOIA, § 7(b), applies to all of them.

ties of the international organization within its territory. The sheer difficulty of administering multiple employment practices in each area in which an organization operates suggests that the purposes of an organization could be greatly hampered if it could be subjected to suit by its employees worldwide.

*Mendaro v. World Bank* (D.C.Cir.1983) 717 F.2d 610, 615–16.

### CONCLUSION

Finding that the U.N. and the eight individual defendants are immune from this action under international and federal law, we deny plaintiff's motion for default judgment and grant defendants' motion to dismiss the complaint in its entirety with prejudice.

SO ORDERED.