**Abdi Hosh ASKIR, Plaintiff,**

v.

**Boutros BOUTROS–GHALI, individually and in his official capacity; Joseph E. Connor, individually and in his official capacity; Brown & Root Services Corp.; and "Doe" Corporations 1 through 10, Defendants.**

No. 95 Civ. 11008 (JGK).

United States District Court, S.D. New York.

July 29, 1996.

Leroy Wilson, Jr., White Plains, New York, G. Lukongwa Binaisa, New York City, for Plaintiff.

Hans Corell, Under Secretary General for Legal Affairs United Nations, New York City, Papers submitted on behalf of the United Nations.

Mary Jo White, United States Attorney, Wendy H. Schwartz, M. Chinta Gaston, Assistant United States Attorneys, New York City, for United States of America, as amicus curiae.

Robert W. Gaffey, Jones, Day, Reavis & Pogue, New York City, for Defendant Brown & Root.

## OPINION AND ORDER

KOELTL, District Judge:

This is an action to recover in excess of $190 million in damages relating to the alleged unauthorized and unlawful possession of the plaintiff's property in Mogadishu, Somalia during the United Nations' military and humanitarian operations there beginning in or about April 1992. The plaintiff's property is a compound encompassing approximately one million square meters containing an office complex, a hotel, recreational facilities, restaurants, and other facilities. The compound was allegedly occupied and used as a military logistics and supply base by the United Nations and its agents, Brown & Root Services Corp. ("Brown & Root"), and the Doe Corporation defendants. The plaintiff alleges that the United Nations wrongfully and without proper authorization occupied approximately one-quarter of the compound for a period of about eighteen months. The plaintiff maintains that the fair rental value of the compound over that period of time is ap-

proximately $190 million, one quarter of which he alleges is allocable to the United Nations. The plaintiff asserts claims against the Secretary General of the United Nations, Boutros Boutros–Ghali and the Under Secretary General for Administration and Management, Joseph E. Connor, (the "U.N. Defendants"), in their official and individual capacities, claiming lost rental value, (Count 1); gross negligence in failing to ensure payments to the plaintiff, (Count 2); and violations of the New York Human Rights Law, Executive Law § 296, arising out of the failure to pay the plaintiff based on his race and national origin, (Count 3). In addition to his claim for compensatory damages of $193,779,447, the plaintiff also seeks exemplary damages of $750 million and prejudgment interest at 18% per year compounded daily, and attorney's fees and costs.

This action is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The plaintiff is a citizen of the Republic of Somalia. Boutros–Ghali is a citizen of Egypt, Connor is a citizen of either New York, New Jersey, or Connecticut, and Brown & Root is incorporated in Delaware and has its principal place of business in Texas. At a hearing held on July 18, 1996, the Court raised the issue of whether the inclusion of aliens as both plaintiff and defendant served to destroy diversity. *See, e.g., International Shipping Co., S.A. v. Hydra Offshore, Inc.,*

875 F.2d 388, 391–92 (2d Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). In response, and on consent of defendant Brown & Root, the plaintiff has dropped defendant Boutros–Ghali as a defendant in this case, thus remedying any jurisdictional defect.[1]

The U.N. Defendants have not been served with the summons and complaint. Legal counsel for the United Nations has submitted papers, however, asserting absolute immunity of the United Nations and the U.N. Defendants and requesting the Court dismiss the Complaint *sua sponte.* At the Court's request, the United States, while not a party in this case, has submitted papers in support of the U.N. Defendants' suggestion of dismissal.[2] The plaintiff opposes dismissal of the U.N. Defendants and seeks an order permitting the U.S. Marshal Service to serve the U.N. Defendants.

■ After considering the submissions, and after listening to oral argument at the hearing on July 18, 1996, the Court dismisses the Complaint *sua sponte* as to the remaining U.N. Defendant, Connor, for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) because Connor is immune from this suit.[3]

1. Although the plaintiff and Brown & Root submitted the stipulation based on Fed.R.Civ.P. 21, in this circuit the proper approach is to amend the pleadings pursuant to Fed.R.Civ.P. 15(a). *See In re Joint E. and S. Dists. Asbestos Litig.,* 124 F.R.D. 538, 541–42 (S. & E.D.N.Y.1989) (citing *Kerr v. Compagnie De Ultramar,* 250 F.2d 860, 864 (2d Cir.1958)), *aff'd sub nom. Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990); *but see Safeco Ins. Co. of America v. City of White House,* 36 F.3d 540, 546 (6th Cir. 1994) (refusing to follow *Kerr* as an "aberration" and noting no difference between application of Rule 15(a) and Rule 21 for curing diversity defect). Therefore, the Court construes the stipulation between the parties as a stipulation to amend pursuant to Rule 15(a) to remove Boutros–Ghali as a party. The stipulation will be so ordered and the Complaint is deemed so amended. Regardless of the procedural device used, however, it is apparent that Boutros–Ghali should be dropped as a defendant. His presence is not necessary in this suit and, as reflected by

the agreement of the parties, dropping him as a party will not prejudice the remaining parties.

2. The United States has not filed a formal Statement of Interest pursuant to 28 U.S.C. § 517.

3. The plaintiff asserts claims against Connor in both his official and individual capacities. The plaintiff acknowledges that the claims against Connor in his official capacity may be treated as an action against the United Nations itself. With respect to the claims against Connor in his individual capacity, none of Connor's alleged actions are outside of the scope of his official duties, however, notwithstanding the plaintiff's bare allegation to the contrary. The plaintiff does nothing more than allege that "the United Nations had no authority or power under the UN Charter to go into Somalia in the first place." (Letter from Leroy Wilson, Jr. to Hon. John G. Koeltl, dated June 13, 1996, at 5; *see* Compl. ¶ 10.) The mere allegation that the United Nations did not possess the authority to undertake its missions in

## I.

Article 2 of the Convention on the Privileges and Immunities of the United Nations ("U.N. Convention"), Feb. 13, 1946, 21 U.S.T. 1418, T.I.A.S. 6900, acceded to by the United States in 1970, provides, in relevant part:

> The United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity.

U.N. Convention, art. 2, § 2, 21 U.S.T. at 1422. *See Boimah v. United Nations General Assembly,* 664 F.Supp. 69, 71 (E.D.N.Y. 1987) ("Under the [U.N.] Convention the United Nations' immunity is absolute, subject only to the organization's express waiver thereof in particular cases."). There has been no waiver of immunity in this case by the United Nations. With respect to officials of the United Nations, immunity is provided under article 5, which provides, in relevant part:

> Officials of the United Nations shall: (a) be immune from legal process in respect of words spoken or written and all acts performed by them in their official capacity. . . .

U.N. Convention, art. 5, § 18, 21 U.S.T. at 1432.

The plaintiff offers three arguments against dismissal based on immunity.

### A.

First, with respect to the U.N. Convention, the plaintiff argues that the immunity afforded under article 2 is coextensive with the immunity provided to international organizations under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288a.[4] The plaintiff argues that the IOIA affords the United Nations the same immunity provided to foreign governments under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* The plaintiff takes the position that the FSIA, and therefore for the purpose of the United Nations the IOIA, provides only restrictive immunity. The Supreme Court recently explained the distinction between restrictive and absolute immunity:

> Under the restrictive, as opposed to the "absolute," theory of foreign sovereign immunity, a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts (jure imperii), but not as to those that are private or commercial in character (jure gestionis). . . . [A] state engages in commercial activity under the restrictive theory when it exercises " 'only those powers that can also be exercised by private citizens,' " as distinct from those " 'powers peculiar to sovereigns.' " Put differently, a foreign state engages in commercial activity for purposes of the restrictive theory only where it acts "in a manner of a private player within" the market.

*Saudi Arabia v. Nelson,* 507 U.S. 349, 359–60, 113 S.Ct. 1471, 1478–79, 123 L.Ed.2d 47 (1993) (citations omitted). The plaintiff argues that this action arises from the commercial activities of the United Nations, namely the leasing and occupation of property, and therefore falls outside the bounds of restrictive immunity.

■ It is unnecessary to decide, *first,* whether the restrictive immunity doctrine of the FSIA applies to the United Nations through the IOIA, or *second,* whether that restrictive immunity would trump the otherwise absolute immunity afforded by the U.N. Convention itself. Neither of these questions are necessary to determine because even if the more limited restrictive immunity doctrine applied, the claims in this case do not arise out of commercial activity by the United Nations. *Compare Tuck v. Pan American Health Org.,* 668 F.2d 547, 550 (D.C.Cir.

---

Somalia does not make whatever actions Connor may have taken to carry out those missions any less a part of his official function. In any event, the immunities provided to Connor under article 5, § 18 of the U.N. Convention are applicable here and would afford him protection in his individual capacity, as described *infra. See Donald v. Orfila,* 788 F.2d 36, 37 (D.C.Cir.1986).

**4.** The United Nations was designated an international organization by President Truman in 1946. *See* Ex. Ord. No. 9698, 11 Fed.Reg. 1809 (Feb. 19, 1946).

1981) (declining to decide whether international organization governed by IOIA was granted restrictive or absolute immunity by virtue of the FSIA because activity was not commercial); *Broadbent v. Organization of American States,* 628 F.2d 27, 32–33 (D.C.Cir.1980) (same).

The scope of restrictive immunity is determined by the nature of the activity rather than its motivation or purpose. *See Saudi Arabia,* 507 U.S. at 360, 113 S.Ct. at 1479; *Broadbent,* 628 F.2d at 33; *Friedar v. Government of Israel,* 614 F.Supp. 395, 399 (S.D.N.Y.1985). In this case, the plaintiff complains that his property was seized and occupied by the United Nations as part of its military and humanitarian peacekeeping mission in Somalia. A military operation, even one directed at ensuring the delivery of humanitarian relief, is not an endeavor commonly associated with private citizens—indeed, military operations are a distinctive province of sovereigns and governments. The occupation of property during such an operation to house troops, store and distribute supplies and ordinance, or manage the logistics and planning of peacekeeping and humanitarian relief efforts is part and parcel of such an operation. The United Nations mission in Somalia provided "a military force to enable relief agencies to deliver food and other supplies to the Somali people." (Compl. ¶ 11.) This is not a case of the United Nations arranging for one of its officials to lease a residential apartment in a foreign state and providing heat, hot water, and electricity—this is a case of an armed military occupation in a country where the government had been overthrown and no administration had taken its place. (Compl. ¶ 8.) Indeed, the perimeter of the compound in Mogadishu was secured with "sandbags, land mines, barbed wire, and other anti-personnel weapons." (Compl. ¶ 22.) There is no doubt that the operation of a military logistics and supply base was not commercial activity of the sort contemplated under the restrictive immunity doctrine. *See Saudi Arabia,* 507 U.S. at 361, 113 S.Ct. at 1479 ("[A] foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature."); *Friedar,* 614 F.Supp. at 399 (acts relating to recruiting for armed forces and determining veterans benefits were "purely governmental").

Accordingly, even if the immunity available to the United Nations and its officials is only restrictive immunity, the immunity still applies because the nature of the acts complained of by the plaintiff are the exercise of governmental functions rather than private commercial activity.

### B.

The plaintiff's second argument is that the interpretation of the term "immunity" in the U.N. Convention itself should exclude commercial activities. The plaintiff makes this argument by pointing out that judicial decisions involving the interpretation of the scope of the U.N. Convention have related principally to employment disputes between former employees and the United Nations or its agencies. *See De Luca v. The United Nations Organization,* 841 F.Supp. 531 (S.D.N.Y.), *aff'd without opinion,* 41 F.3d 1502 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1429, 131 L.Ed.2d 310 (1995); *Klyumel v. United Nations,* No. 92 Civ. 4231, 1992 WL 447314 (S.D.N.Y. Dec. 4, 1992) (report and recommendation by Grubin, M.J.), *aff'd and adopted,* 1993 WL 42708 (S.D.N.Y. Feb. 17, 1993); *Boimah,* 664 F.Supp. 69; *see also Shamsee v. Shamsee,* 74 A.D.2d 357, 428 N.Y.S.2d 33 (2d Dep't 1980) (appeal of contempt order against U.N. Joint Staff Pension Fund).

None of these cases limit their respective interpretations of the immunity afforded by the U.N. Convention. Indeed, in *De Luca* the Court observed that the U.N. Convention contained no exceptions to its immunity provisions obviating any need to consider whether the FSIA or the IOIA applied. *See De Luca,* 841 F.Supp. at 533 n. 1. The U.N. Convention by its terms provides immunity from "*every* form of legal process," the only exception being express waiver by the United Nations itself.

■ In any event, even if there is an exception to the immunity provided by article 2 of the U.N. Convention based on a distinction between commercial and noncommercial

activity, as explained above, the activities upon which this lawsuit is based are not commercial.

Accordingly, the immunity provided by the U.N. Convention applies in this case.

### C.

The plaintiff's third and final argument is based on the allegedly wrongful nature of the acts of the United Nations and Connor. The plaintiff argues that the United Nations did not have the authority to adopt the resolutions passed in connection with the peace-keeping operations in Somalia. The plaintiff also alleges that Connor was not authorized to refuse to pay the plaintiff rent for the use of the compound or to refuse to pay him because of racial animus or bias based on the plaintiff's national origin. The plaintiff also makes allegations of fiscal improprieties relating to the operation of the United Nations generally and the operation in Somalia in particular, attributing the mismanagement to defendant Connor. (Compl. ¶ 46–50.)

The plaintiff's allegations of malfeasance do not serve to strip the United Nations or Connor of their immunities afforded under the U.N. Convention. *See De Luca*, 841 F.Supp. at 535 (defendant remained immune under the IOIA notwithstanding allegations of illegality and wrongdoing); *Tuck*, 668 F.2d at 550 n. 7 (IOIA immunity still applied notwithstanding allegations of race discrimination); *Donald v. Orfila*, 788 F.2d 36, 37 (D.C.Cir.1986) (allegations of improper motive did not strip individual of immunity under IOIA).

The allegation that the United Nations did not properly adopt its own resolutions authorizing its actions in Somalia is equally unavailing. The plaintiff has done nothing more than offer conclusory allegations that the missions in Somalia were beyond United Nations authority because they were interventions in civil wars. This allegation stands in direct contradiction to a series of duly adopted United Nations Security Counsel Resolutions ("UNSC"), including UNSC Resolution 794 (Dec. 3, 1992) and UNSC Resolution 814 (Mar. 26, 1993), each adopted pursuant to Chapter VII of the United Nations Charter.

Accordingly, the plaintiff's allegations of misconduct by Connor and lack of authority by the United Nations do not overcome Connor's assertion of immunity in this case.

### CONCLUSION

For the reasons explained in this Opinion, the Court dismisses *sua sponte* the claims against defendant Connor in his official and individual capacities pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because, as described above, Connor is immune from being sued in this action.

**SO ORDERED.**