# United States Court of Appeals
## For the First Circuit

No. 00-1618

AXELL AND LUCREZIA EMMANUEL,

Plaintiffs, Appellants,

v.

THE UNITED STATES OF AMERICA
AND HANS ISBRANDTSEN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Chief Judge,

Boudin and Lipez, Circuit Judges.

Stephen B. Hrones, with whom Hrones & Garrity was on brief, for appellants.
Mark B. Stern, with whom David W. Ogden, Assistant Attorney General, Donald K. Stern, United States Attorney, and Alisa B. Klein were on brief, for appellees.

June 11, 2001

**TORRUELLA, Chief Judge.** Appellants Axell and Lucrezia Emmanuel appeal a district court decision granting the United States summary judgment on all counts. We affirm.

## BACKGROUND

While the Emmanuels contend that many of the underlying facts remain in dispute, the following bare-bones version of events is uncontested. Axell and Lucrezia Emmanuel, a married couple, had chartered a ship from Hans Isbrandtsen for the business purpose of transporting cars from Boston, Massachusetts to Haiti. In December 1995, they arrived in St. Marc, Haiti on said ship with vehicles for unloading. A dispute arose between the Emmanuels and Isbrandtsen which prompted Isbrandtsen to contact the United States embassy, report his concern for the safety of the ship's crew, and request assistance.

An embassy official then contacted the United Nations Mission in Haiti ("UNMIH"). Major Roy Thomas (a Canadian military officer) of the UNMIH sent a United Nations military unit commanded by Captain Garth Estadt, a U.S. Army officer, to the scene to investigate the disturbance. Once there, a physical confrontation between Lucrezia Emmanuel and Master Sergeant Francis Norbury occurred, resulting in injuries to both of them. The Emmanuels brought this suit in federal court in Massachusetts against Isbrandtsen and the United States. Their claims against the United States, which are the only relevant

ones for purposes of this appeal, allege negligence and tortious acts of United States agents resulting in personal and financial injury.

The district court granted summary judgment in favor of the United States and ordered all claims against the United States to be dismissed. Emmanuel v. United States, Civ. No. 97-12787-RWZ (D. Mass. May 6, 2000) (Mem. of Decision). The court held that the Emmanuels' claims were barred due to the immunity afforded the United States under the Status of Forces Agreement between the United Nations and Haiti.[1]

## DISCUSSION

As explained by the district court, the UNMIH assumed full responsibility for United Nations peacekeeping operations in Haiti in 1994. In order to effectuate this goal, the United Nations and Haiti executed a Status of Forces Agreement ("U.N.-Haiti SOFA"), formally known as the "Agreement Between the United Nations and the Government of Haiti on the Status of the United Nations Mission in Haiti." The U.N.-Haiti SOFA extends the immunity enjoyed by the United Nations[2] to

---

[1] The district court also dismissed the Emmanuels' Federal Tort Claims Act claims that were based on negligence of United States embassy personnel, finding that any acts or omissions attributed to U.S. embassy personnel were not the proximate cause of any harm that came to the Emmanuels. The Emmanuels have not appealed the dismissal of their FTCA claims.

[2] United Nations immunity is absolute unless expressly waived. United Nations Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, art. II, § 2, 21 U.S.T. 1418, 1422, T.I.A.S. 6900, acceded to by the United States in 1970. See Askir v. Boutros-Ghali, 933 F. Supp. 368, 371 (S.D.N.Y. 1996) (Op. and Order).

the UNMIH, as well as "to the property, funds and assets of participating States used in connection with the UNMIH." U.N.-Haiti SOFA, ¶ 4. The United States is a "participating state"[3] and, accordingly, entitled to immunity from claims arising from UNMIH conduct.

The Emmanuels attempt to dodge this immunity by claiming that: (1) the U.N.-Haiti SOFA does not apply to them, as an agreement exclusively between the government of Haiti and the United Nations; and (2) the dispatch of a United Nations unit to the scene of the dispute between the Emmanuels and Isbrandtsen was an action outside the scope of the UNMIH mandate, and not entitled to United Nations immunity. Both assertions are easily rebutted.

The language of the U.N.-Haiti SOFA demonstrates that the agreement covers claims such as the one brought by the Emmanuels:

> Except as provided in paragraph 52, any dispute or claim of a private law character to which UNMIH or any member thereof is a party and over which the courts of Haiti do not have jurisdiction because of any provision of the present Agreement, shall be settled by a standing claims commission to be established for that purpose.

---

[3] "'Participating State' means a State contributing personnel to the aforementioned components of UNMIH." U.N.-Haiti SOFA, ¶ 1(d). It is undisputed that the United States contributes such personnel.

U.N.-Haiti SOFA, ¶ 50 (emphasis added).[4] The agreement, in referencing "any dispute or claim of a private law character" without mentioning the government of Haiti, dispels any argument that the U.N.-Haiti SOFA applies only to Haiti and the UNMIH and not to individuals in Haiti. In addition, the absolute immunity enjoyed by the United Nations and extended unequivocally to the UNMIH covers all suits brought by any party, including private individuals like the Emmanuels. See Askir v. Boutros-Ghali, 933 F. Supp. 368, 368-371 (S.D.N.Y. 1996) (Op. and Order) (finding that the United Nations enjoyed immunity against damages suit brought by a Somali citizen). The argument, then, that the U.N.-Haiti SOFA does not apply to the Emmanuels is meritless.

The second argument, that the particular actions taken here were outside the scope of the UNMIH mandate and not entitled to United Nations immunity, is equally unavailing. The Emmanuels claim that their dispute with Isbrandtsen was within the exclusive jurisdiction of the Haitian Port Authority. The district court disagreed, concluding from affidavits submitted by the United States that "the UNMIH routinely dispatched troops to respond to reported civil disturbances because of the lack of trained Haitian police." Emmanuel, Civ. No. 97-12787-RWZ, at 5. The district court went on, holding that, regardless of the propriety of the intervention by the UNMIH unit, the order to

---

[4] Paragraph 52 does not apply to this case, covering only disputes "between UNMIH and the Government [of Haiti]." U.N.-Haiti SOFA, ¶ 52.

investigate "came from the U.N. through its chain of command." Id. The military personnel that were involved in the altercation were accordingly "acting in connection with the U.N. mission." Id.; see Askir, 933 F. Supp. at 370 n.3 ("The mere allegation that the United Nations did not possess the authority to undertake its mission in Somalia does not make whatever actions Connor may have taken to carry out those missions any less a part of his official function."). We find the reasoning of the district court to be unassailable, and adopt the district court's opinion regarding this issue in full.

## CONCLUSION

The district court decision granting summary judgment and dismissing the United States from this suit is **affirmed**.