# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ZORAN ZUZA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-01099 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| OFFICE OF THE HIGH REPRESENTATIVE, | : | | |
| *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I.  INTRODUCTION

In this action, Zoran Zuza asserts a range of claims arising from his removal in 2004 from

government employment in Bosnia, pursuant to a decision issued by the High Representative, an

international official tasked with managing peace agreement implementation efforts in Bosnia

and Herzegovina.  Because all defendants in this case are immune from suit under the

International Organizations Immunities Act, the Court grants the defendants' motion to dismiss

for lack of subject-matter jurisdiction.

## II.  FACTUAL BACKGROUND

In 1995, the war in Bosnia and Herzegovina concluded with the signing of the Dayton

Peace Agreement.  *See* General Information, Office of the High Representative, Defs.' Ex. 2,

ECF No. 4-4.  The agreement established the Office of the High Representative in Bosnia and

Herzegovina ("OHR") to "oversee the implementation of the civilian aspects of the Peace

Agreement on behalf of the International Community." *Id.* The Peace Implementation Council ("PIC"), a group of fifty-five countries and international organizations, supplies financial and other support for the peace process, and the PIC's Steering Board, of which the United States is a member, provides the High Representative with "political guidance." The Peace Implementation Council and Its Steering Board, OHR, Defs.' Ex. 2.

In 1997, the PIC endorsed the High Representative's authority to make "binding decisions, as he judges necessary" on various matters, including "measures to ensure implementation of the Peace Agreement throughout Bosnia and Herzegovina and its Entities." PIC Bonn Conclusions, Dec. 10, 1997, art. XI.2, Defs.' Ex. 7, ECF No. 4-11. These measures "may include actions against persons holding public office or officials . . . who are found by the High Representative to be in violation of legal commitments made under the Peace Agreement or the terms for its implementation." *Id.* The following year, the PIC specifically affirmed the High Representative's authority to remove officials from government posts:

> The Council acknowledges that leaders whom the High Representative . . . bar[s] from official office may also be barred from running in elections and from any other elective or appointive public office and from office within political parties until further notice. This should end the practice whereby officials removed are re-assigned to political party positions.

PIC Madrid Decl. Annex, Dec. 16, 1998, art. X.4, Defs.' Ex. 8, ECF No. 4-12.

Pursuant to this authority, in 2004, then-High Representative Paddy Ashdown removed Zoran Zuza from his post as Chief of Cabinet of the Speaker of the Assembly of Republika Srpska, a region of Bosnia and Herzegovina. *See generally* Decision removing Zoran Zuza from his position as Chief of Cabinet of the Speaker of the RS NA and from other public and party positions he currently holds, OHR 279/04 (Jan. 7, 2004) ("Zuza Decision"), Compl. Ex. A, ECF No. 1; *see also* Compl. ¶¶ 18, 19, ECF No. 1. The High Representative based this decision on

findings that Zuza "[a]s a constituent of the current political culture within Republika Srpska, . . . [was] derivatively culpable for contributing to the institutional failure to purge . . . the political landscape of conditions conducive to the provision of material support and sustenance to individuals indicted under Article 19 [of the Statute of the International Criminal Tribunal for the former Yugoslavia]" and that Zuza therefore "obstruct[ed] the process of peace implementation." Zuza Decision 4. The removal was "mandat[ed]," according to the decision, by the "principles of proper governance and transparency, protection of the integrity and reputation of the institutions of Bosnia and Herzegovina, and active support for the rule of law and for the international obligations of Bosnia and Herzegovina." *Id.*

In 2014, Zuza, proceeding *pro se*, filed this action against OHR, Ashdown, and the current High Representative Valentin Inzko in his official capacity (collectively "Defendants"). *See generally* Compl. In his complaint, Zuza alleges that the High Representative's actions exclusively targeted Orthodox Serbs such as Zuza, imposing on them a stigma that deprived them of their ability to obtain employment. *See id.* ¶¶ 20, 24–29, 32–36. Zuza also alleges that the High Representative denied him due process, and that the decision to bar him from public office had inadequate legal and factual support. *See id.* ¶¶ 22, 30–31. In its ten counts, the complaint asserts a violation of the Alien Tort Statute, 28 U.S.C. § 1350, and multiple tort claims under the law of this forum, the District of Columbia. *See* Compl. ¶¶ 56–116. By way of relief, Zuza seeks compensatory and punitive damages. *See id.* at 32.[1]

---

[1] The Court finds it rather odd that Zuza, who claims to be proceeding *pro se*, also requests attorney's fees. *See* Compl. 32.

Defendants moved to dismiss the action.  *See* Defs.' Mot. Dismiss, ECF No. 4.  The motion is now fully briefed and ripe for decision.[2]

### III.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In determining whether jurisdiction exists on a Rule 12(b)(1) motion to dismiss, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  In ruling on a motion to dismiss, a court may consider court filings and exhibits because they constitute "matters of which it may take judicial notice," *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006), or documents referenced in and integral to the complaint, *see Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

Where a defendant international organization or official is immune from suit, the district court must dismiss the complaint for lack of subject-matter jurisdiction.  *See Lempert v. Rice*, 956 F. Supp. 2d 17, 25 (D.D.C. 2013) (dismissing suit against international organization); *Brzak v. United Nations*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008) (dismissing suit against officers of international organization); *cf. Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39

---

[2] After Zuza filed his opposition and Defendants their reply, Zuza moved for leave to file a sur-reply.  *See* Mot. Leave to File Sur-Reply, ECF No. 8.  The Court granted Zuza leave.  *See* Minute Order of Jan. 5, 2015.  Zuza also filed a supplemental memorandum on June 1, 2015, which the Court has reviewed and considered.  *See* ECF No. 15.

(D.C. Cir. 2000) (holding that foreign sovereign immunity deprived district court of subject-matter jurisdiction).

## IV. ANALYSIS

In their motion to dismiss, Defendants contend that subject-matter jurisdiction does not lie over this action because they are all entitled to immunity under the International Organizations Immunities Act. *See* Mem. Supp. Defs.' Mot. Dismiss 8–13, ECF No. 4-1. For the reasons given below, the Court agrees.

### A. Legal Framework

In 1945, Congress enacted the International Organizations Immunities Act ("IOIA" or "the Act"). *See* IOIA, Pub. L. No. 291, 59 Stat. 669 (1945) (codified as amended at 22 U.S.C. §§ 288–288f). As a general matter, in order to qualify as an "international organization" under the Act, an entity must satisfy two criteria provided in section 1—participation in some manner by the United States and designation by the President as an organization entitled to the protections of the IOIA:

> For the purposes of this subchapter, the term "international organization" means a public international organization in which the United States participates pursuant to any treaty or under the authority of any Act of Congress authorizing such participation or making an appropriation for such participation, and which shall have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities provided in this subchapter.

22 U.S.C. § 288. Section 1 further provides that the President has authority to "withhold or withdraw" the privileges or immunities of such organizations or their officers, or "condition or limit [their] enjoyment." *Id.*

Section 2(b) and section 7(b) of the Act set forth the scope of immunity available to international organizations and their officers and employees, respectively. Section 2(b) provides that "[i]nternational organizations . . . shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity . . . ." *Id.* § 288a(b). Similarly, section 7(b) provides that "officers and employees of such organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such . . . officers[] or employees except insofar as such immunity may be waived by the . . . international organization concerned." *Id.* § 288d(b).

In summary, as a general matter, international organizations and their officers and employees enjoy broad immunity from judicial process under the IOIA if the United States "participates" in the organization and the organization is designated by the President as entitled to such immunity. *See id.* §§ 288, 288a(b), 288d(b). But this immunity can be waived by the organization or limited by the President. *See id.*; *see also Mendaro v. World Bank*, 717 F.2d 610, 613–14 (D.C. Cir. 1983) (describing "two sources of limitation" for immunity under section 2(b)).

In 2010, Congress amended the IOIA by passing the Extending Immunities to the Office of the High Representative in Bosnia and Herzegovina and the International Civilian Office in Kosovo Act ( "2010 Amendment"). *See* 2010 Amendment, Pub. L. 111–177, 124 Stat. 1260 (2010) (codified at 22 U.S.C. § 288f–7). In relevant part, the 2010 Amendment provides that:

> The provisions of this subchapter may be extended to the Office of the High Representative in Bosnia and Herzegovina (and to its officers and employees) . . . in the same manner, to the same extent, and subject to the same conditions, as such provisions may be extended to a public international organization in which the United States participates pursuant to any treaty or under the

authority of any Act of Congress authorizing such participation or making an appropriation for such participation.

22 U.S.C. § 288f–7. The following year, pursuant to the IOIA and the 2010 Amendment, the

President issued Executive Order 13,568:

> By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 1 of the International Organizations Immunities Act (59 Stat. 669, 22 U.S.C. 288), and the Extending Immunities to the Office of the High Representative in Bosnia and Herzegovina and the International Civilian Office in Kosovo Act of 2010 (Public Law 111–177, 124 Stat. 1260), it is hereby ordered that all privileges, exemptions, and immunities provided by the International Organizations Act be extended to the Office of the High Representative in Bosnia and Herzegovina and to its officers and employees . . . .

Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011).

## B. OHR's International Organization Immunity

The Court readily concludes that OHR's international organization immunity under the

IOIA deprives this Court of subject-matter jurisdiction over all claims against it.[3]

---

[3] Throughout his briefing, Zuza asserts that Defendants have the burden to establish their immunity, relying on a line of cases decided under the Foreign Sovereign Immunities Act ("FSIA"). *See Mwani v. bin Laden*, 417 F.3d 1, 15 (D.C. Cir. 2005) ("It is the defendant's burden to prove that a plaintiff's allegations do not fall within the bounds of an FSIA exception."). By Zuza's account, those cases govern here because the FSIA is "analogous" to the IOIA. Pl.'s Mem. Opp'n 18. Although Defendants appear to concede that they bear the burden of proof, the Court has its doubts. The authorities cited by Zuza for the burden of proof proceed from the premise that the FSIA embodies a "restrictive view of sovereign immunity." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131 (D.C. Cir. 2004). The IOIA, however, provides for near-"absolute" immunity, at least under the D.C. Circuit's decision in *Atkinson v. Inter-American Development Bank*. 156 F.3d 1335, 1341 (D.C. Cir. 1998) (holding that in enacting the IOIA, Congress adopted the body of foreign sovereign immunity law "only as it existed in 1945—when immunity of foreign sovereigns was *absolute*," subject only to the President's decision to extend such immunity (emphasis added)). Indeed, the Third Circuit case that Zuza cites for the proposition that the FSIA and IOIA are "analogous" expressly declines to follow *Atkinson*. *See* Pl.'s Mem. Opp'n 18 (citing *Nokalva v. Eur. Space*

Preliminarily, several issues are not in dispute. The parties do not dispute that if OHR is indeed entitled to immunity under the IOIA, such immunity would be broad enough to preclude subject-matter jurisdiction over the claims against it. *See* 22 U.S.C. § 288a(b) (providing for "same immunity from suit and every form of judicial process as is enjoyed by foreign governments").[4] Nor does Zuza argue that OHR has waived its immunity, *id.*, or that the President has limited OHR's immunity in any way, *id.* § 288; Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011); *see also Mendaro*, 717 F.2d at 613–14. Finally, the parties do not dispute that the United States does not "participate" in OHR within the meaning of section 1. *See* 22 U.S.C. § 288.[5]

The parties' sole point of disagreement is whether OHR is entitled to immunity under the IOIA in the first place, and on this question, the Court's analysis begins and ends with the text of the Act, as amended, and Executive Order 13,568. The plain text of the 2010 Amendment provides that the immunity accorded by the IOIA "may be extended" to OHR "in the same

---

*Agency*, 617 F.3d 756, 762–65 (3d Cir. 2010)). In any event, the Court need not decide the burden of proof issue today. Assuming *arguendo* that Defendants have the burden to prove that that they enjoy immunity under the IOIA, the Court still concludes that they have successfully carried it.

[4] Zuza does contend, in the alternative, that even if OHR enjoys immunity, such immunity cannot reach the individual defendants in this action. The Court rejects this argument below. *See infra* Part IV.C.

[5] The Defendants' position on this matter, however, has changed during the course of briefing. *Compare* Mem. Supp. Defs.' Mot. Dismiss 10 (contending that "Congress provided its authorization" for United States participation in OHR by way of the 2010 Amendment), *with* Defs.' Reply 3 ("[T]he United States need not participate in OHR because Congress has effectively waived that requirement through adoption of [the 2010 Amendment]."). Generally, new arguments asserted in reply are waived. *See Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006). Zuza, however, does not claim that Defendants' tardy argument is waived, and he is not prejudiced by the Court's consideration of the argument because he has filed a sur-reply thoroughly addressing it. *Cf. Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) ("The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues.")

manner, to the same extent, and subject to the same conditions," as such immunity is extended to organizations in which the United States participates. *See* 22 U.S.C. § 288f–7. For an organization in which the United States participates, the "manner," "extent," and "conditions" of such immunity are determined when the organization is "designated by the President through appropriate Executive order." 22 U.S.C. § 288. In short, then, the 2010 Amendment waived section 1's "participation" requirement as to OHR; designation by the President would suffice, standing alone, to confer immunity upon OHR, subject to any conditions or limitations imposed by the President. The President then extended immunity to OHR by way of Executive Order 13,568, expressly invoking these provisions of the IOIA and the 2010 Amendment. *See* Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011). Accordingly, OHR is entitled to international organization immunity under the IOIA.

Zuza disputes this construction of the IOIA and the 2010 Amendment. In his view, the 2010 Amendment did not waive section 1's "participation" requirement, and because the United States does not "participate" in OHR (as the parties agree), OHR is not an "international organization" entitled to immunity. *See* 22 U.S.C. § 288. In support of his contention that the 2010 Amendment did not waive the "participation" requirement as to OHR, Zuza proffers three primary arguments, but the Court finds none to be persuasive.

First, Zuza claims that Defendants' interpretation of the 2010 Amendment is barred by judicial estoppel on two independent grounds: (i) Defendants' interpretation, offered in reply, differs from the interpretation in their moving memorandum, and (ii) OHR, in a prior proceeding before the Ninth Circuit in *Sarkis v. Lajcak*, conceded that the IOIA offered it no immunity. *See* Pl.'s Sur-Reply 4–5. But judicial estoppel is wholly inapplicable here. "There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a

party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?" *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). Here, Defendants have not "succeeded in persuading a court to accept [their] earlier position": This Court has obviously not passed on any arguments advanced in Defendants' moving memorandum, and the Ninth Circuit avoided the question of IOIA immunity altogether in disposing of the appeal in *Sarkis*. *Id.*; *see also New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations." (internal quotation marks omitted)); *see generally Sarkis v. Lajcak*, 425 F. App'x 557, 559 (9th Cir. 2011) (affirming on personal jurisdiction grounds).[6]

Next, Zuza contends that the 2010 Amendment effected no waiver because the text does not contain the term "waive" (or variants such as "waiver") or any prepositional phrase beginning with "notwithstanding." *See* Pl.'s Sur-Reply 5–8. Zuza contends that Congress knows how to use such precise language, and he invokes cases declining to draw conclusions

---

[6] Additionally, so far as the proceedings in *Sarkis v. Lajcak* are concerned, Zuza has not demonstrated that Defendants took a position inconsistent at all—let alone "clearly inconsistent"—with the one they now advance (in their reply brief). *Moses*, 606 F.3d at 798. In 2008, before the U.S. District Court for the Northern District of California, OHR initially explained that the IOIA, standing alone, did not provide it with immunity. *See* Specially Appearing Defs.' Reply 1–2, Pl.'s Ex. 1, ECF No. 6-2. Following the 2010 Amendment, when the *Sarkis* case was on appeal, OHR contended before the Ninth Circuit that the Amendment demonstrated Congress's "intent to shield OHR from lawsuits" but recognized that "the executive order regarding this amendment has not yet been signed." Defs.-Appellees' Replacement Br. 35, Pl.'s Ex. 4, ECF No. 6-5. Then, in 2011, after the Executive Order was issued, OHR asserted its immunity under the IOIA before the Ninth Circuit (as it does now in this proceeding). *See* Cymrot 28(j) letter, Pl.'s Ex. 6, ECF No. 6-7.

from statutory text silent on the matter in dispute. *See, e.g.*, *Hedrick v. Novastar Mortg., Inc. (In re Hedrick)*, 524 F.3d 1175, 1187 (11th Cir. 2008) ("Where Congress knows how to say something but chooses not to, its silence is controlling"). But here, "silence" hardly characterizes Congress's view of the relationship between the 2010 Amendment and the "participation" requirement in section 1 of the IOIA. As explained above, the plain text of the 2010 Amendment demonstrates that Congress authorized the President to confer immunity upon OHR, regardless of whether OHR satisfies the "participation" requirement.

Lastly, Zuza warns of purported interpretive and constitutional difficulties entailed in finding the "participation" requirement to be waived by the 2010 Amendment. Zuza claims that if the 2010 Amendment effected such a waiver, then the requirement that the President extend immunity via executive order (left intact by the 2010 Amendment, as the parties agree) would be rendered meaningless, given that the sole purpose served by Presidential authorization is to confirm that the "participation" requirement is satisfied. *See* Sur-reply 9–10. Moreover, Zuza claims, conditioning immunity on executive action alone without any concomitant Congressional action would be inimical to the separation of powers. *See id.* at 10–12.

Zuza fundamentally misunderstands the executive's statutory and constitutional role in extending immunity under the IOIA. Section 1 of the IOIA "delegate[s] to the President the responsibility for updating the immunities of international organizations in the face of changing circumstances." *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1341 (D.C. Cir. 1998) (discussing 22 U.S.C. § 288). Far from making a merely ministerial determination that the "participation" prong is satisfied, the President "retains authority to modify, condition, limit, and even revoke the otherwise absolute immunity" of any international organization under section 1. *Id.*; *see also* 22 U.S.C. § 288 (explaining that the President has authority to "withhold or

withdraw" the immunities of international organizations or their officers, or "condition or limit [their] enjoyment"). Under the 2010 Amendment, the President retains this same authority to "updat[e]" OHR's immunity. *Atkinson*, 156 F.3d at 1341. Moreover, this delegation does not run afoul of the separation of powers doctrine; rather, it recognizes and incorporates the broad discretion historically enjoyed by the Executive Branch in granting immunity to foreign sovereigns. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983) (explaining that because "foreign sovereign immunity is a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution," the Supreme Court before passage of the FSIA "consistently . . . deferred" to Executive Branch requests for immunity on behalf of foreign sovereigns); *cf. Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) ("[T]he historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's vast share of responsibility for the conduct of our foreign relations." (internal quotation marks and citation omitted)).[7]

Because the 2010 Amendment authorized the President to extend international organization immunity to OHR regardless of whether the United States "participates" in OHR under section 1 of the IOIA, and because the President did so by Executive Order 13,568, OHR is entitled to immunity under the IOIA.

---

[7] Zuza's various other submissions are meritless. Zuza contends that an organization must have operations in the United States in order to enjoy immunity under the IOIA, but cites no statutory text or case law supporting this proposition. *See* Pl.'s Mem. Opp'n 31–32. Zuza also argues that the Executive Order cannot serve as the "sole basis" for OHR's immunity, but Defendants do not advance such an argument (as clarified in reply, in fairness to Zuza). *See id.* at 33–36. Zuza finally claims that because "no other forum" is available to him, granting OHR immunity would be "unjust and inequitable." Pl.'s Mem. Opp'n 37. The lack of another forum, however, cannot undo the express will of Congress and the President to extend immunity to OHR.

### C. Inzko and Ashdown's International Official Immunity

In the alternative, Zuza contends that even if OHR enjoys organizational immunity under the IOIA, such immunity does not extend to the individual defendants Inzko and Ashdown. *See* Pl.'s Mem. Opp'n 38–42. The Court disagrees.

Preliminarily, the Court sets forth several premises, which Zuza presumably accepts in proceeding *arguendo*. The 2010 Amendment allows the President to extend IOIA immunity to OHR's "officers and employees." 22 U.S.C. § 288f–7. The President did so by way of the Executive Order. *See* Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011). Under section 7(b) of the IOIA, "officers and employees" who enjoy immunity are shielded "from suit and legal process relating to acts performed by them in their official capacity." 22 U.S.C. § 288d(b). Together, then, the 2010 Amendment and the Executive Order entitle OHR "officers and employees" to immunity from actions such as the one *sub judice*.

Even accepting these premises, Zuza contends that the substantive protections of section 7(b) are unavailable to Inzko and Ashdown because they are neither "officers" nor "employees" of OHR, given the absence of certain legal structures and organizational practices. In Zuza's view, OHR lacks the requisite articles of incorporation, bylaws, or "separate corporate personality necessary to have corporate 'officers.'" Pl.'s Mem. Opp'n 38–39. Zuza further alleges that High Representatives do not identify themselves as "officers" of OHR; rather, OHR is simply the High Representative's staff. *See id.* at 40–41.

As Defendants rightly note, the IOIA cannot bear such an "absurd result." Defs.' Reply 5. In *Tuck v. Pan American Health Organization*, the D.C. Circuit explained the "functional" inquiry that governs determination of international official status under the IOIA. 668 F.2d 547, 550 n.7 (D.C. Cir. 1981). In that case, Tuck brought a claim against the Pan American Health

Organization and its Director, Dr. Hector R. Acuna, who was sued in his official capacity. *Id.* at 550. On appeal, the D.C. Circuit held that under section 7(b) of the IOIA, Dr. Acuna was "immune from suit in his official capacity." *Id.* "To the extent that the acts alleged in the complaint relate to Dr. Acuna's functions a[s] PAHO Director," the court reasoned, "the provisions of 22 U.S.C. s 288d(b) (1976) protect him from suit." *Id.* In a footnote, the court further explained that "international official immunity" is "immunity coextensive with functional necessity," *id.* at 550 n.7 (citation omitted), and found further support in the Supreme Court's application of official immunity for acts falling "within the outer perimeter of [the official's] line of duty," *id.* (quoting *Barr v. Matteo*, 360 U.S. 564, 575 (1959) (plurality opinion)). In remanding, however, the court explained that the district court could have diversity jurisdiction, to the extent that Tuck "alleged any actions taken by Dr. Acuna in his individual capacity." *Id.* at 551.

In this case, Zuza's allegations against both Inzko and Ashdown render them squarely within the "functional" immunity accorded to "officers" of international organizations covered by the IOIA. *Tuck*, 668 F.2d at 550 n.7. The complaint names Inzko in his official capacity as High Representative, *see* Compl. ¶ 6, and alleges that he "ratified, affirmed and adopted" Ashdown's decisions, *id.* ¶ 8. Although the complaint does not specify the capacity in which Ashdown is sued, all of the acts alleged therein "relate to [his] functions" as High Representative. *Tuck*, 668 F.2d at 550; *see also* Compl. ¶ 7 ("[I]t was Lord Ashdown who, as HR, issued and signed, on June 30, 2004, the fifty-nine HR 'Decisions' which removed from public office . . . fifty-nine Orthodox Serb public servants, including Plaintiff . . . ."); PIC Madrid Decl. Annex, Dec. 16, 1998, art. X.4, Defs.' Ex. 8 (affirming High Representative's power to

remove government officials).[8] Zuza cites no authority to support his attempt to import into the IOIA a technical definition of "officer" under corporate law or to require an "officer" to self-identify as such expressly in order to enjoy immunity. *See Tuck*, 668 F.2d at 550 (concluding that individual was officer of international organization without examining organization's corporate personality or officer's stated title).

As for Ashdown, Zuza submits in the alternative that he is sued only in his *personal* capacity because he is no longer the High Representative. *See* Pl.'s Mem. Opp'n 41 n.63. The Court is unaware of any authority standing for the novel proposition that upon separation from his post, an international official loses the immunity that he previously enjoyed under section 7(b) of the IOIA against claims arising out of actions taken in his (prior) official capacity. Indeed, several courts have held to the contrary. *See Brzak*, 551 F. Supp. 2d at 319–20 (holding that former U.N. High Commissioner for Refugees was immune under IOIA, where "acts alleged occurred in the course of an official's exercise of functions"); *D'Cruz v. Annan*, No. 05-cv-8918, 2005 WL 3527153, at *1 (S.D.N.Y. Dec. 22, 2005) (concluding same as to former U.N. officers); *De Luca v. United Nations Org.*, 841 F. Supp. 531, 534–35 (S.D.N.Y. 1994) (concluding same as to former U.N. officers). Furthermore, Zuza has not "alleged any actions taken by [Ashdown] in his individual capacity." *Tuck*, 668 F.2d at 551.[9]

---

[8] Defendants appear to concede that Inzko and Ashdown are not "officers" of OHR, and instead submit that they can be equated to OHR itself on the basis of certain language in the complaint alleging legal identity between all defendants. *See* Defs.' Reply 6. The Court declines to consider this alternative theory.

[9] Furthermore, an immunity exception for former officials is rather difficult to square with the 2010 Amendment, which provides that an Executive Order extending immunity to OHR "may provide for the provisions of this subchapter to continue to extend to [OHR] (and to its officers and employees) . . . *after that Office has been dissolved*." 22 U.S.C. § 288f–7 (emphasis added). Indeed, the Executive Order did just this. *See* Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011) ("In the event [that] [OHR] . . . is dissolved, the privileges, exemptions,

Because Inzko and Ashdown carried out all of the actions alleged in the complaint in their official capacity as an "officer" of OHR, they are entitled to immunity under the IOIA. 22 U.S.C. § 288d(b).

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 4) is **GRANTED**. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 4, 2015                                        RUDOLPH CONTRERAS
                                                           United States District Judge

---

and immunities of that organization under [IOIA], as well as those of its officers and employees, shall continue to subsist.").

In a footnote, Zuza cites *Samantar v. Yousuf*, 560 U.S. 305 (2010), to support his contention that he may sue Ashdown in his "personal capacity." Pl.'s Mem. Opp'n 41 n.63. *Samantar* teaches that "foreign state" under the FSIA does not govern immunity of "an official acting on behalf of the foreign state," *id.* at 319, given that there was "nothing in the statute's origin or aims to indicate that Congress . . . wanted to codify the law of foreign official immunity," *id.* at 325.  Accordingly, there, the FSIA did not bar an action against a former official of a foreign sovereign sued in his personal capacity.  *Id.*  Here, by contrast, the IOIA expressly provides for immunity "relating to acts performed by [international officials] in their official capacity and falling within their functions as such."  22 U.S.C. § 288d(b).