# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Submitted March 2, 2017    Decided May 30, 2017

No. 16–7027

ZORAN ZUZA,
APPELLANT

v.

OFFICE OF THE HIGH REPRESENTATIVE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14–cv–01099)

---

*Zoran Zuza*, pro se, was on brief for the appellant.

*Mark A. Cymrot* was on brief for the appellees.

*Benjamin C. Mizer*, Principal Deputy Assistant Attorney General at the time the brief was filed, United States Department of Justice, *H. Thomas Byron*, *III*, and *Edward Himmelfarb*, Attorneys, were on brief as *amicus curiae* in support of the appellees.

Before: HENDERSON, TATEL and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This case presents a straightforward question: What happens to a pending lawsuit when the defendants establish that they are statutorily immune from "legal process"? We conclude that it must cease. We therefore affirm the district court's dismissal for lack of subject matter jurisdiction.

## I. BACKGROUND

At the start of the 1990s, the Socialist Federal Republic of Yugoslavia (Yugoslavia) was a multiethnic federation in southeastern Europe. But throughout the early 1990s, the country began to disintegrate. Bosnia and Herzegovina—one of Yugoslavia's six constituent republics—declared its independence in early 1992. A bloody conflict ensued, ending several years later with the 1995 Dayton Peace Agreement (Agreement). The Agreement established Bosnia and Herzegovina as an independent, democratic and multiethnic state with two separate political subdivisions—the Republika Srpska and the Federation of Bosnia and Herzegovina. It also established the Office of the High Representative (OHR), a body charged with overseeing parts of the Agreement's implementation on behalf of the international community. The OHR receives "political guidance" from the Steering Board of the Peace Implementation Council (PIC), the latter comprising fifty-five countries and agencies that support the peace process in various ways. Supplemental Appendix 11–12.

In the years following the Agreement, the PIC formally convened several times. At one such gathering in Bonn, Germany in December 1997, the PIC granted the High Representative authority to "mak[e] binding decisions, as he judges necessary, on . . . measures to ensure implementation of the Peace Agreement throughout Bosnia and Herzegovina." *Id.* at 37. The measures include "actions against persons holding

public office or officials . . . who are found by the High Representative to be in violation of legal commitments made under the Peace Agreement or the terms for its implementation." *Id.* One year later, at its December 1998 Madrid Conference, the PIC determined that "leaders whom the High Representative . . . bar[s] from official office may also be barred from running in elections and from any other elective or appointive public office and from office within political parties until further notice." *Id.* at 66.

In June 2004, then-High Representative Jeremy Ashdown removed Zoran Zuza from his post in the Republika Srpska government. Ten years later, Zuza sued the OHR, Ashdown and Valentin Inzko, the current High Representative. *Zuza v. Office of High Representative*, 107 F. Supp. 3d 90, 92 (D.D.C. 2015). On June 4, 2015, the district court determined that all defendants were statutorily immune to Zuza's suit under the International Organizations Immunities Act (IOIA), 22 U.S.C. §§ 288 *et seq.* As the court explained, the IOIA generally extends immunity to an international organization, its officers and its employees, if the United States participates in it and if the President has designated it as entitled to immunity through an executive order. 22 U.S.C. §§ 288, 288a(b), 288d(b).[1] To extend such protection to the OHR, the Congress in 2010 enacted legislation making the OHR immune "in the same manner, to the same extent, and subject to the same conditions" as an international organization in which the United States participates. Extending Immunities to the Office of the High

---

[1] IOIA immunity is absolute. *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1341–42 (D.C. Cir. 1998). Nevertheless, it comes subject to two sources of limitation: An organization may expressly waive its immunity and the President may limit or modify an organization's immunity under certain circumstances. *Mendaro v. World Bank*, 717 F.2d 610, 613–14 (D.C. Cir. 1983).

Representative in Bosnia and Herzegovina and the International Civilian Office in Kosovo Act of 2010, sec. 2, § 17, 124 Stat. 1260 (2010) (codified at 22 U.S.C. § 288f-7). On March 8, 2011, the President issued an Executive Order formally extending IOIA immunity to the OHR, its officers and its employees. Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011). Given this history, the district court readily concluded OHR, Ashdown and Inzko were immune from Zuza's suit, which it accordingly dismissed for lack of subject matter jurisdiction.

Shortly thereafter, Zuza sought reconsideration. Among other things, he argued that Ashdown and Inzko had not complied with section 8(a) of the IOIA and so were not entitled to immunity. Section 8(a) provides that no person is entitled to IOIA immunity until one of three conditions precedent is fulfilled. 22 U.S.C. § 288e(a). The first is met when the person seeking immunity "ha[s] been duly notified to and accepted by the Secretary of State as a representative, officer, or employee[.]" *Id.*[2] The district court ordered supplemental briefing and requested a statement of interest from the United States. The United States responded that Ashdown and Inzko had been notified to and accepted by the Secretary of State (Secretary) and thus qualified for immunity.

The defendants and the United States submitted four letters substantiating Ashdown's and Inzko's notification and acceptance. The first was a June 2011 letter from Inzko to then-Secretary Hillary Clinton, notifying her of nearly three dozen

---

[2] The other two are fulfilled when a person "ha[s] been designated by the Secretary of State, prior to formal notification and acceptance, as a prospective representative, officer, or employee" or "is a member of the family or suite, or servant, of one of the foregoing accepted or designated representatives, officers, or employees." 22 U.S.C. § 288e(a).

OHR officers and employees.  That list included Inzko but not Ashdown.  The other three letters were all dated August 2015 or later, meaning they were written well after Zuza brought suit.  On August 13, 2015, Inzko wrote then-Secretary John Kerry to "formally present and 'notify'" Ashdown to him. Supplemental Appendix 135.  Then, on August 17, 2015, Inzko wrote Ambassador Gentry O. Smith to "request written confirmation that the notifications of Lord Ashdown and [Inzko] were accepted by the Secretary of State."  Joint Appendix 105.  And finally, on November 20, 2015, Clifton Seagroves, the Acting Deputy Director of the State Department's Office of Foreign Missions, composed a letter confirming that State Department records reflected both Ashdown's and Inzko's notification and acceptance.

Based on these letters, the district court denied reconsideration.  It found that Ashdown and Inzko met section 8(a)'s requirements.  The court found no problem with the fact that most of the letters postdated Zuza's suit.  It concluded that IOIA immunity can apply "retroactively" to reach litigation already commenced. *Zuza v. Office of the High Representative*, No. CV 14-01099 (RC), 2016 WL 447442, at *6 (D.D.C. Feb. 4, 2016).  It thus denied reconsideration and Zuza appealed.

## II.  ANALYSIS

Zuza's challenges on appeal are many.  We have fully considered each but find none persuasive.  We limit our discussion to one—namely, whether Ashdown and Inzko were entitled to immunity, even if section 8(a)'s requirements were not met until August 2015 or later.  We review the district court's resolution of this question of law *de novo*. *Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 280 (D.C. Cir. 2014).[3]  We

---

[3] It is of no moment that the district court addressed this issue in denying Zuza's Rule 59(e) reconsideration motion.  Although we

agree that the district court lacked subject matter jurisdiction regardless of the date Ashdown and Inzko's immunity vested.

The IOIA's text compels our conclusion. It entitles qualifying officers and employees to immunity not only from "suit" but also from "legal process." 22 U.S.C. § 288d(b). Legal process is an expansive term. It refers broadly to "[t]he proceedings in any action." BLACK'S LAW DICTIONARY 1399 (10th ed. 2014); *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1808 (1993) (defining process to include "the course of procedure in a judicial action or in a suit in litigation"). As we have explained, IOIA immunity, "where justly invoked, properly shields defendants not only from the consequences of litigation's results but also from the burden of defending themselves." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981) (internal quotation marks omitted). For these reasons, IOIA immunity does not operate only at a lawsuit's outset; it compels prompt dismissal even when it attaches mid-litigation.

This is not an anomalous conclusion. Courts have found that other forms of immunity acquired *pendente lite* mandate dismissal of a validly commenced lawsuit. *See, e.g.*, *Abdulaziz v. Metro. Dade Cty.*, 741 F.2d 1328, 1329–30 (11th Cir. 1984) ("[D]iplomatic immunity . . . serves as a defense to suits already commenced."). And that makes sense. Federal courts are tribunals of "limited jurisdiction," possessing "only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When intervening events deprive a court of its adjudicative authority, the litigation must end. For example, an action may

---

ordinarily review a Rule 59(e) motion's denial for abuse of discretion, our review is *de novo* when the district court considers and rejects a legal argument. *E.g.*, *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013).

be dismissed upon the repeal of the jurisdictional statute under which the case was brought. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 274 (1994). Or it may end when the President exercises his lawful authority to restore a nation's previously abrogated sovereign immunity. *Republic of Iraq v. Beaty*, 556 U.S. 848, 866 (2009). Circumstances vary but the guiding principle is the same: Removing judicial power to adjudicate a case compels its dismissal.

So too here. Seagroves's letter left no doubt that Ashdown and Inzko had been "duly notified to and accepted by the Secretary of State as a representative, officer, or employee[.]" 22 U.S.C. § 288e(a). Under these circumstances, they are "immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees[.]" *Id.* § 288d(b). Accordingly, we affirm the district court's judgment.

*So ordered.*